LYDIA M. STEVENS *vs.* EBENEZER G. YOUNG.

Essex.    January 14, 15, 1919. — June 25, 1919.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & CARROLL, JJ.

*Way,* Private. *Deed,* Construction, Conveyance by reference to plan. *Easement.*

At the hearing of a petition for the registration of the title to certain land, the following facts appeared: The owner of a nine acre tract of land caused a plan to be prepared dividing it into forty lots and four ways, called, respectively, C Avenue and W Avenue, which ran east and west, and M Avenue and L Avenue, which ran north and south.   He then first conveyed a portion of the tract, described as one tract by metes and bounds, which was bounded by C Avenue and L Avenue and also was referred to by the numbers of the lots on the plan, to a predecessor in title of the petitioner, the deed carrying title to the middle of L Avenue.   The next land conveyed from the tract was to the immediate predecessor in title of the respondent, and conveyed, as one tract, a strip of land lying southerly of the strip in which was situated the land previously conveyed, describing it as one solid tract without reference to its lot numbers on the plan. This conveyance included the entire fee of W Avenue and all the remaining lots on both sides of L Avenue, excepting those opposite the lots already conveyed to the petitioner's predecessor in title, and included the fee of L Avenue between the lots included in the deed, and the only reference to L Avenue in the deed was a statement that one boundary line of the land described ran "across land marked L Avenue."    Later the petitioner acquired title to the lots opposite those formerly conveyed to him on L Avenue, the grantors conveying, "so far as we are enabled to," a right of way "in common with others . . . in and over the streets and Avenues shown on said plan."    In this deed there also were restrictions requiring a set-back of buildings on L Avenue.   *Held,* that

(1) A finding was warranted that, by the second deed from the tract, which was that to the respondent's immediate predecessor in title, the original owner disclosed a purpose not to follow, but to abandon the layout of the plan;

(2) A further finding was warranted that the original owner by the deed to the respondent's predecessor in title intended to convey the fee in W Avenue and in that part of L Avenue included in the solid tract described without giving to the grantee any easement in the rest of L Avenue;

(3) That a decree was warranted registering in the petitioner the unincumbered title to that part of L Avenue which lay between the land on both sides of it owned by him.

PETITION, filed in the Land Court on May 21, 1917, for the registration of the title to certain land in Swampscott, described as one parcel, but roughly shown on the sketch plan, of which a copy is printed below, as lots thirteen to eighteen, inclusive, including that land between lots sixteen and seventeen designated as Locust Avenue.

The respondent, who owned lots thirty to forty, inclusive, including the fee in Walnut Avenue and that land lying between lots thirty-nine and forty and designated Locust Avenue, claimed a

right of way over the part of Locust Avenue between lots sixteen and seventeen.

The petition was heard by *Davis,* J. He found the following facts, in substance:

"The premises in question are situated on the westerly side of Humphrey Street in Swampscott. Humphrey Street is the main road from Lynn to Marblehead. Until comparatively recently the land on the westerly side of Humphrey Street in the neighborhood of that now in question lay in large farm tracts, some of which, however, are in process of suburban development.

"In 1889 one Crosman acquired title to a nine acre tract adjoining the Marblehead town line, and in 1896 had a plan drawn and recorded showing this tract divided into ordinary suburban house lots by four streets. Running westerly from Humphrey Street through the tract the plan shows a street called Crosman Street, leaving a tier of lots of about a third of the width of the whole tract on its northerly side and two tiers of lots on its southerly side. From

the westerly end of Crosman Street, substantially parallel to Humphrey Street, the plan shows a cross street called Maple Avenue, and about a third of the way between Humphrey Street and Maple Avenue, and substantially parallel with them, another street called Locust Avenue. Along the southerly side, connecting Maple Avenue and Locust Avenue, the plan shows a street called Walnut Avenue.

"The first conveyance out of this original tract was made in 1900, when a block of four lots on the southeasterly corner of Humphrey Street and Crosman Avenue running back to and bounding by Locust Avenue was made to predecessors in-title of the petitioner.

"The next conveyance was in 1906 to the immediate predecessors in title of the respondent, from whom he purchased in 1907. This deed conveyed the southerly portion of the original tract between Humphrey Street and Maple Avenue. It is carefully described by reference to the recorded plan, but is described as a solid tract without any reference to its lot numbers on that plan. The description begins on the southeasterly side of Maple Avenue at a given distance southerly from its junction with Crosman Avenue, and thence runs easterly to Humphrey Street, bounding northerly in a straight line by other land of the grantor, the land conveyed in 1900 to the predecessors of the petitioner, and 'across land marked Locust Avenue on said plan,' thence southerly by Humphrey Street to land of Rowe, thence westerly by the Rowe land to Maple Avenue, and thence northerly by Maple Avenue to the point of beginning. There is no reference other than that above quoted to Locust Avenue. Walnut Avenue, which on the plan lies entirely within the lot thus described along its southerly side between Maple and Locust Avenues, is not mentioned. At the end of the particular description is a recital that it is that part of the original tract 'which lies southeasterly of said Maple Ave. and southwesterly of a straight line from said Humphrey Street to said Maple Avenue which is the southwesterly boundary of lots numbered' fourteen to twenty-three inclusive and twenty-nine on the recorded plan. Then follows the clause, 'together with the right to use said Maple and Crosman Avenues, as shown on said plan for street purposes in common with others.' It is under this deed that the respondent claims rights of way, across

land now of the petitioner, in Locust Avenue as shown on the plan. . . .

"The deed in question, except for the deed of 1900 to the predecessors of the petitioner, was the first one made with reference to the recorded plan. No one except the petitioner's predecessor had acquired any previous rights in regard to it. . . . It seems to me clear that by this deed the plan was materially changed by the elimination of Walnut Avenue and the 'land marked Locust Avenue' on said plan, and that the grant of rights of way over Maple Avenue and Crosman Street specifically limited the rights of way granted as appurtenant to the premises of the respondent thereby conveyed. . . .

"In April, 1912, all of the remaining lots were conveyed by reference to said plan, the lots on the westerly side of Locust Avenue opposite those conveyed in 1900 being described as bounding easterly on Locust Avenue. This deed of 1912 contains the clause, 'together with a right of way in and over the streets or avenues shown on said plan as if the same were public highways.' Of the lots so conveyed the petitioner in May, 1912, acquired lots number seventeen and number eighteen, on the southeasterly corner of Crosman Street and Locust Avenue, described as bounding easterly by Locust Avenue. This deed contains the clause, 'together with a right of way in common with others, so far as we are enabled to grant the same, in and over the streets and avenues shown on said plan as if the same were public highways.' The two lots thus conveyed were also made subject to certain restrictions, among them that 'no part of any building shall be erected or placed within fifteen feet of the line of said Crosman or Locust Avenues.' . . .

"The respondent, since he acquired his land in 1907, has used the location of Locust Avenue as shown on the original recorded plan, and this, because of the topography, affords the most convenient and practical way of access to his rear land. This use has not, however, ripened into an easement by prescription."

The judge ordered a decree for the petitioner; and the respondent alleged exceptions.

*S. Parsons,* for the respondent.

*J. M. O'Donoghue,* for the petitioner.

BRALEY, J.  It appears that Samuel F. Crosman, having acquired the ownership of nine acres of land, caused a plan to be prepared dividing the tract into lots numbered consecutively from one to forty with proposed avenues or streets which connected with Humphrey Street, a public way.  The plan was recorded in the registry of deeds, and by mesne conveyances the petitioner has become the owner of lots thirteen, fourteen, fifteen, sixteen, seventeen and eighteen, while the respondent Young owns lots numbered thirty to forty inclusive.

By the first deed in 1900 Crosman conveyed to one Entwistle, the petitioner's predecessor in title, lots thirteen, fourteen, fifteen and sixteen.  The exact wording of the grant does not appear.  We assume on the record that the description in the deed to the petitioner is the same as in the deed of Crosman to Entwistle.  The premises are described by metes and bounds as one indivisible tract, giving the northwesterly boundary as "Locust Street or Avenue so called," after which follow the words, "Being lots thirteen, fourteen, fifteen and sixteen on a plan of land drawn for Samuel F. Crosman . . . and recorded with Essex county (South District) Deeds book 1468 page 600."

By deed dated August 26, 1907, the respondent Young acquired title from one Linnehan, to whom the land had been conveyed on November 21, 1906.  This deed also described the premises as one parcel, beginning "at the most Westerly corner thereof at the point in the Northeasterly boundary line of land . . . where the Southeasterly side line of Maple Avenue, as shown on a plan of lots owned by S. F. Crosman . . . and recorded . . . would intersect said boundary line if continued in a straight line . . .," and after giving the courses and distances the description is followed by this sentence, "Together with the right to use said Maple Avenue and Crosman Avenue, as shown on said plan, for street purposes in common with others."

The petitioner on May 22, 1912, gained title to lots seventeen and eighteen under a deed which describes the parcel as bounded "Northeasterly by Crosman Avenue, one hundred twenty feet; Southeasterly by Locust Avenue, one hundred thirty five and 75/100 feet; Southwesterly by lots 38 and 39 on a plan of land hereinafter mentioned, one hundred twenty feet, and Northwesterly by lot No. 19 on said plan, one hundred thirty five and

75/100 feet; being lots numbered 17 and 18 on a plan of this and other lots, . . . together with a right of way in common with others so far as we are enabled to grant the same, in and over the streets and Avenues shown on said plan as if the same were public highways. . . . Said premises are conveyed subject to the following restrictions which shall remain in force for twenty years from the date hereof, viz.: 'No building shall be erected or placed on either of said lots costing less than Three thousand dollars. Said premises shall be used for a dwelling only. No three tenement house or a house to be occupied by three families or any house known as a three tenement flat roof house shall be erected or placed on the granted premises and no part of any building shall be erected or placed within fifteen feet of the line of said Crosman or Locust Avenue, except that steps may extend within said restricted space.'"

While the description in the petition for registration consolidates the descriptions as if lots thirteen, fourteen, fifteen, sixteen, seventeen and eighteen constituted an entire tract which never had been divided as shown by the plan, the petitioner, who claims under Samuel F. Crosman, being bound by the recitals in her deeds, is estopped on her own title from contending, that so much of Locust Avenue as lies within the description of the deed of May 22, 1912, has been extinguished as to other lot owners who have acquired appurtenant rights to use the avenue. *Downey* v. *H. P. Hood & Sons*, 203 Mass. 4, 10, and cases there cited. But this well settled rule, where the sale is by a plan which by reference is incorporated in the grant, does not control when it appears from the deed and the attendant circumstances, that the parties did not impliedly intend the grant to include all of the proposed ways. *Attorney General* v. *Whitney*, 137 Mass. 450, 455. The description in the deed under which the respondent claims undoubtedly conveys, as if they were one parcel, not only lots thirty and forty, but also the fee in Walnut Avenue and in the westerly half of Locust Avenue. The fee having passed, the respondent, subject to the prior rights, if any, of other lot owners, could use those proposed ways for the benefit of his own estate as he might determine. The land, however, is conveyed as stated in the decision of the trial court, "as a solid tract without any reference to the lot numbers on that plan," the nor-

therly boundary being described as "running across land marked Locust Avenue." And immediately following the description and constituting part of the grant are the words previously quoted, "Together with the right to use said Maple and Crosman Avenues, as shown on said plan for street purposes in common with others." It is true, but quite beside the point, that no change appears of record in the plan as originally drafted. The parties, of course, could enter into any bargain they wished to make. The evidence warranted a finding that the purpose of this conveyance was not to follow but to abandon the layout of the plan and the purchase could be made under terms which, while passing the fee in Walnut Avenue and that part of Locust Avenue between lots thirty and forty leading into Walnut Avenue, conferred no easement in the remainder of Locust Avenue. The intention of the parties in so far as consistent with legal rules of construction governs. *Bott* v. *Burnell,* 11 Mass. 162, 167. *Allen* v. *Holton,* 20 Pick. 458. *Hobart* v. *Towle,* 220 Mass. 293. *Coolidge* v. *Dexter,* 129 Mass. 167. *Taft* v. *Emery,* 174 Mass. 332, 334.

We are accordingly of opinion that the judge correctly ruled that the respondent's grant included only Maple and Crosman Avenues, and that he had acquired no right of passage in or over Locust Avenue from his easterly line to Crosman Avenue. *Light* v. *Goddard,* 11 Allen, 5, 8. *Regan* v. *Boston Gas Light Co.* 137 Mass. 37. *Pearson* v. *Allen,* 151 Mass. 79.

*Exceptions overruled.*