COLORADO COURT OF APPEALS 2016COA89

Court of Appeals No. 14CA0529
Huerfano County District Court No. 01CV91
Honorable Claude W. Appel, Judge

Gary Lensky and Camp D'Orvid at Casa Del Arroyo,

Plaintiffs-Appellants,

v.

Gery DiDomenico, Carol McDonald, Charles B. Choin, William R. Trujillo,
Manual D. J. Archuleta, Maria J. Archuleta, and William L. Trujillo,

Defendants-Appellees.

ORDER REVERSED

Division I
Opinion by JUDGE FREYRE
Taubman and Dailey, JJ., concur

Announced June 16, 2016

Dennis B. Green, Denver, Colorado, for Plaintiff-Appellant Camp D'Orvid at
Casa Del Arroyo (On the Briefs)

Gary Lensky, Pro Se

Kettelkamp Young & Kettelkamp, P.C., C. Todd Kettelkamp, Pueblo, Colorado,
for Defendants-Appellees

¶ 1     In this proceeding for use of a parcel of land, involving plaintiffs Gary Lensky and Camp D'Orvid at Casa Del Arroyo, and defendants, neighboring property owners,[1] we are asked to decide whether a putative adverse possessor, who lacks a legal claim to title in property, nevertheless has an interest in the property enforceable against everyone except the rightful owner.  This is a novel question in Colorado.  We conclude that a putative adverse possessor does have such an interest, and we reverse the trial court's order concluding otherwise.

I. Relevant Facts and Procedural History

A. Prior Proceeding

¶ 2     In 1998, Lensky purchased a one-acre parcel of property in Gardner, Colorado, from Martha and Louis Valdez (the Valdezes). Title insurance could not be provided because of "title problems." Lensky eventually learned the nature of the title problems — all of

---

[1] Gery DiDomenico, Carol McDonald, Charles B. Choin, William R. Trujillo, Manual D. J. Archuleta, Maria J. Archuleta, and William L. Trujillo.  The notice of appeal names Agnes F. Quillian and the heirs of the estate of Agnes F. Quillian as defendants; however, the briefs do not and, thus, we do not include them in our caption.

the structures and improvements that he had purchased from the Valdezes were "off the deed" and actually located on adjacent land rather than on the deeded property. The adjacent land totaled approximately twenty-three acres.

¶ 3    Lensky undertook to identify the last record owner of the adjacent property. Initially, he was advised by Huerfano County officials that the property had been "off the tax rolls" for seventy-two years and was referred to as "no man's land" because the record owner "could not be traced." Lensky claimed, however, that after "extensive research," he "traced" the adjacent property to a 1908 deed from Fred Griffith to Agnes F. Quillian, who "had been deceased for over 80 years." In 2000, Lensky paid the back taxes to 1994 on approximately seventeen acres of that property.

¶ 4    In October 2001, Lensky filed a quiet title action under C.R.C.P. 105 (complaint). He claimed fee simple ownership to the approximately twenty-three acres adjacent to the property he had purchased from the Valdezes by adverse possession for at least eighteen years, pursuant to section 38-41-101, C.R.S. 2015, and by adverse possession under color of title, pursuant to section 38-41-108, C.R.S. 2015.

¶ 5    When Lensky filed the complaint, defendants or their predecessors in interest were the record owners of certain parcels of land located within the quiet title property.  Defendants' interests were also apparent by their actual use of portions of the adjacent property.  Indeed, Lensky had observed people using the adjacent property for a variety of purposes, such as riding ATVs, discarding garbage, and drinking.  The complaint, however, only named Agnes F. Quillian and "all unknown persons who claim an interest in the subject matter of this action" as defendants.

¶ 6    Lensky filed a verified motion for service by publication under C.R.C.P. 4(g), stating that the defendants to be served by publication "are unknown persons, who cannot be served by personal service in the State of Colorado."  The motion identified the addresses, or last known address of "Agnes Quillian" as "General Delivery, Gardner, CO 81040."  Based on Lensky's representations, the trial court granted the motion for service by publication.[2]

---

[2] John and Marie Castro (the Castros) filed an answer, denying Lensky's right to quiet title to a portion of the property that was the subject property in a related quiet title action brought by the Castros against him in Huerfano County, case number 02CV38. Lensky and the Castros stipulated that the property described in

¶ 7     On October 30, 2002, the trial court entered a default decree quieting title to the adjacent property in Lensky, less the small parcel awarded to the Castros.  When the default decree was entered, defendants each held an interest in portions of the property described in the decree.

¶ 8     On October 23, 2007, Lensky conveyed a portion of the subject property to Camp D'Orvid at Casa Del Arroyo, a section 501(c)(3) religious organization.  Hereafter, unless the context indicates otherwise, we refer to Lensky and Camp D'Orvid at Casa Del Arroyo as "Lensky."

¶ 9     In February 2009, defendants filed a C.R.C.P. 60(b)(3) motion to vacate the order for service by publication and the subsequent decree quieting title.  Defendants argued that they were entitled to personal service of the complaint based on their ownership claims to portions of the quiet title property, and, thus, the order for publication was void.

---

case number 02CV38 would be excluded from Lensky's quiet title action, and the trial court quieted title to a portion of the property in the Castros.

4

¶ 10    The court granted defendants' C.R.C.P. 60(b)(3) motion and vacated the order for publication and the default decree. It found that Lensky had misrepresented or "withheld material information" from the court in the verified motion for service by publication. Because defendants were omitted as named defendants in the quiet title action "even though their interest and identity could have easily been ascertained had plaintiff exercised the requisite due diligence," and because defendants were not personally served a summons and petition for quiet title, they were not bound by the decree and could "attack the same."

¶ 11    After the court denied Lensky's motion to amend the findings and judgment, Lensky filed an amended C.R.C.P. 105 complaint naming defendants as parties and requesting that their "property be excluded from his request for a quiet title decree." Defendants filed a motion to dismiss the amended complaint or a motion for summary judgment. The trial court granted the motion for summary judgment and dismissed Lensky's amended complaint, finding that there were no facts to support Lensky's claim for adverse possession based on section 38-41-108, section 34-41-109, C.R.S. 2015, or tacking.

¶ 12    Lensky appealed the trial court's C.R.C.P. 60(b)(3) order granting summary judgment.  Simultaneously, defendants filed a motion for order to vacate which the trial court stayed pending the appeal.

¶ 13    A division of this court affirmed the trial court's judgment and orders in an unpublished opinion.  *See Lensky v. DiDomenico*, (Colo. App. No. 10CA2076, Mar. 22, 2012) (not published pursuant to C.A.R. 35(f)).  It concluded that defendants should have been named as parties in the quiet title action, defendants should have been personally served, and Lensky's omissions and misrepresentations in the verified motion for publication rendered the service by publication void.  Because the order for publication and the default decree subsequently entered were void, the division affirmed the court's order granting defendants' C.R.C.P. 60(b)(3) motion.

¶ 14    The division also affirmed the trial court's summary judgment dismissing Lensky's claim of adverse possession based on tacking.  It found Lensky's claim that the Valdezes had abandoned the property to be inconsistent with his claim that he and the Valdezes had occupied the property for the requisite eighteen years based on

tacking. Moreover, it agreed with the trial court that Lensky had failed to present any evidence that the Valdezes owned or possessed the adjacent property, including the abandoned structures.

## B. Current Proceeding

¶ 15    While the case was on appeal, Lensky continued to occupy the subject property.[3] He renovated old structures, erected new structures, erected fences, hung no trespassing signs, and placed locks on existing gates. After the mandate was issued, the trial court lifted the stay on defendants' motion for an order to vacate. That motion requested "additional orders" under C.R.C.P. 105(a) to remove Lensky from the subject property, to restrain Lensky from interfering with defendants' use of the subject property, and to require Lensky to remove all signs, barriers, and locked gates which restricted defendants' access to the subject property.

¶ 16    The trial court held a hearing on defendants' motion. Before the hearing, the parties stipulated that Lensky was a "putative adverse possessor," i.e., that Lensky was reputed or believed by

---

[3] This includes the property adjacent to Lensky's property, excluding the land owned by the defendants that was identified in the prior proceeding.

most people to be one attempting to adversely possess the subject property. Black's Law Dictionary 1432 (10th ed. 2014). Defendants acknowledged that they had no title to the subject property and modified their request for relief. Instead of asking the trial court to order Lensky's removal from the property, they requested unrestricted access to and use of it. Defendants argued that because Lensky had been found to have no legal or equitable claim to the subject property, he had no right to restrict their access to it. They asked the court to issue an order preventing Lensky from interfering with others' use of the property.

¶ 17    Relying on *Spring Valley Estates, Inc. v. Cunningham*, 181 Colo. 435, 510 P.2d 336 (1973), Lensky responded that, as a putative adverse possessor, he had an interest in the subject property enforceable against everyone except the true owner. He described renovating old structures, building new permanent additions, erecting fences, locking the gates at the entrances, and posting no trespassing signs. He admitted confronting people who attempted to enter the subject property and telling them that they could not be on "his" land.

¶ 18    The trial court issued an order granting in part and denying in part defendants' motion.  As relevant here, it concluded as follows:

- Because Lensky's claims had been fully and finally adjudicated in the prior proceeding, the law of the case was that Lensky had no legal or equitable right to the subject property.

- Because Lensky had no legal or equitable right to the property, *Spring Valley Estates* did not support his claimed right as a putative adverse possessor to exclude defendants or others from the subject property.

- C.R.C.P. 105(a) authorized the court to enter "additional orders" to completely adjudicate the rights of all parties to the subject property.

- Defendants did not claim an interest in or seek possession of the subject property.  They sought to use the property without interference as they had used it for many years before Lensky took possession.

- Because of his prior misrepresentations to the court, Lensky had made improvements to the subject property under a bad faith belief that he held title to the property.

9

¶ 19    The trial court ordered Lensky to remove barricades, barriers, signs, and locks that restricted access to the subject property.  It further ordered Lensky and his associates to refrain from confronting defendants as they entered or left the subject property.  Lensky appeals this order.

## II. Rights of a Putative Adverse Possessor

¶ 20    Lensky contends the trial court erred in finding that he had no rights as a putative adverse possessor.  He argues that this court's prior decision affirming his lack of legal title to the subject property fully adjudicated his prior claim to the property as an adverse possessor, but that it had no prospective effect.  He further argues that his continued possession of the subject property as a putative adverse possessor gives him an interest in the property (including the right to restrict access to it) that is superior to everyone else's interest except for that of the rightful owner.  We agree.

## A. Applicable Law

¶ 21    Because no Colorado case has squarely addressed the rights of a putative adverse possessor, we begin by examining Colorado's law on adverse possession and the dictum in *Spring Valley Estates* on which Lensky relies.  This issue involves a question of law that we

10

review de novo. *Matoush v. Lovingood,* 177 P.3d 1262, 1269 (Colo. 2008). We then examine other jurisdictions' resolutions of similar issues.

¶ 22 To obtain title by adverse possession in Colorado, a party must establish that his possession was hostile, actual, exclusive, adverse, under a claim of right, and uninterrupted for the statutory period. *Beaver Creek Ranch, L.P. v. Gordman Leverich Ltd. Liab. Ltd. P'ship,* 226 P.3d 1155, 1160 (Colo. App. 2009). Colorado's statutory period is eighteen years. § 38-41-101(1). Whether possession is hostile, actual, exclusive, and adverse is a question of fact. *Smith v. Hayden,* 772 P.2d 47, 52-53 (Colo. 1989).

¶ 23 "[H]ostile intent is based on the intention of the adverse possessor to claim exclusive ownership of the property occupied." *Id.* at 56. Proof of adverse possession extends beyond actual possession and must demonstrate that the record owner has been excluded from the property. *Id.* at 52. The possession must be hostile against both the true owner and the world from its inception. *Schuler v. Oldervik,* 143 P.3d 1197, 1202-03 (Colo. App. 2006).

¶ 24    To actually possess the land, an adverse possessor must act as an ordinary landowner would in utilizing the land for the ordinary use of which it is capable. *Smith*, 772 P.2d at 52. And, the adverse possessor's use of the property must be sufficiently open and obvious to apprise a true owner who exercises reasonable diligence that the claimant intends to claim adversely. *Schuler*, 143 P.3d at 1197.

¶ 25    Finally, for any claim of title by adverse possession vesting on or after July 1, 2008, an adverse claimant must establish a good faith belief that he or she (or a predecessor in interest) was the property's actual owner, which belief was reasonable under the circumstances. *See People v. Guiterrez-Vite*, 2014 COA 159, ¶ 14. By adding the good faith belief requirement, "the General Assembly made clear that it did not sanction the acquisition of property simply through trespass." *People v. Bruno*, 2014 COA 158, ¶ 11.[4]

---

[4] Because neither party raises the good faith issue on appeal, we need not address whether a putative adverse possessor must have a good faith belief that they are the property's actual owner or how this new provision of the adverse possession statute would affect Lensky's future ability to obtain title by adverse possession. See Kristine S. Cherek, *From Trespasser to Homeowner: The Case Against Adverse Possession in the Post-Crash World*, 20 Va. J. Soc.

¶ 26    In *Spring Valley Estates,* our supreme court considered the question of when remedies become available to an adverse possessor against a former owner.  It held that trespass damages could only be recovered by an adverse possessor against a former owner after the eighteen-year statutory period had run.  In dictum, the court discussed the rights of adverse possessors before the completion of the statutory period:

> [A]dverse possession does relate back to the beginning of possession for some purposes . . . .  In other words, from the beginning of his possession period, [an] adverse possessor has an interest in a given piece of property enforceable against everyone *except* the owner or one claiming through the owner.  However, it is not until the adverse possessor has possessed the land for the duration of the statutory period that his interest matures into an absolute fee and his possessory rights become enforceable against the former owner as well as third parties.

*Spring Valley Estates,* 181 Colo. at 437-38, 510 P.2d at 338.  This dictum suggests that a party who has hostile, actual, exclusive, and

---

Pol'y & L. 271, 317-21 (2012) (discussing changes to Colorado's adverse possession statute).  We note, however, that the parties stipulated that Lensky was a putative adverse possessor and that attorneys are presumed to know the law.  *See Hinojos-Mendoza v. People,* 169 P.3d 662, 670 (Colo. 2007).

adverse possession of a piece of property has rights in that property which are enforceable against everyone but the true owner, even if the party has possessed the property for less than the statutory eighteen years.  Even so, only at the conclusion of those eighteen years does the party's right in the property then become enforceable against the true owner.

¶ 27    Other jurisdictions that have considered the rights of an adverse possessor who has not yet acquired title have reached similar conclusions.  Defendants have not cited, nor have we located any contrary authority.

¶ 28    For example, in *Uliasz v. Gillete*, 256 N.E.2d 290 (Mass. 1970), petitioners sought a right of access across property adjacent to respondents' land in a residential development.  Previously, respondents had claimed ownership of the property by adverse possession through the execution of a straw deed; however, the recorded deed failed to mention adverse possession.  Nevertheless, respondents remained in possession of the property.  Petitioners sought, among other things, a declaration from the court that respondents had no rights in the property.

¶ 29     The Massachusetts Supreme Judicial Court rejected petitioners' request, stating, "[t]he respondent, being in possession of that land, has the right to continue in possession as against any person except the true owner, or a person having a superior right to possession." *Id.* at 297.

¶ 30     Similarly, in *Hallmark v. Baca*, 301 P.2d 527 (N.M. 1956), the plaintiff, a putative adverse possessor of property, sued the defendant, who had erected a fence on the property and excluded plaintiff from a portion of it. Neither party claimed an ownership interest in the property. The issue was "whether the Defendant was right in ousting the Plaintiff of his possession; or Plaintiff, by virtue of his prior possession of the property was entitled to continue in possession of it until the rightful owner would oust him." *Id.* at 528. The New Mexico Supreme Court held that "plaintiff is right in his declaration that he is entitled to hold possession until ousted by someone showing a better right thereto[.]" *Id.*

¶ 31     Additionally, in *Howard v. Mitchell*, 105 S.W.2d 128, 133 (Ky. Ct. App. 1936), the Kentucky Court of Appeals considered the inheritance rights of an adverse possessor and concluded that such rights existed. It described an adverse possessor's right as

"[c]onditional ownership," "[i]mperfect ownership," "inchoate title," and "[g]rowing title." *Id.* (citations omitted). It concluded that the courts will protect such an adverse possessor "against all the world except the true owner." *Id.*

¶ 32 The Wyoming Supreme Court considered the issue of possession between an adverse possessor and a purported title holder and held "[a]s a person in possession the plaintiff was entitled to bring the action [for quiet title]. The admission of the defendants [that plaintiffs possessed the disputed property] constituted a prima facie showing of an interest in the land that was good against any claimant that could not show a better right." *Meyer v. Ellis*, 411 P.2d 338, 341 (Wyo. 1966) (citation omitted).

¶ 33 Based on the dictum in *Spring Valley* and the decisions of other state courts, we conclude that "from the beginning of his possession period," a putative adverse possessor has an interest in the property enforceable against all other parties, except the true owner. We also conclude that this possessory interest includes the right to exclude all others from the property except the true owners. *See* 3 Am. Jur. 2d *Adverse Possession* § 232 (2016) ("The possession of one holding in adverse possession is good as against

16

strangers. … The courts will protect the adverse claimant against all the world except the true owner.") (footnote omitted); *see also* 2 C.J.S. *Adverse Possession* § 251 (2016) ("During the period of adverse possession, an adverse claimant has only an inchoate right which if pursued and protested may ripen into title. However, he or she has an ownership which the courts will protect against all the world except the true owner or someone showing a better right.").

## B. Application

¶ 34 With these principles in mind, we review the trial court's conclusion that Lensky had no rights in the subject property as a putative adverse possessor. The parties stipulated that Lensky was a putative adverse possessor and Lensky's testimony confirmed his and Camp D'Orvid's intent to attempt to gain title to the subject property through adverse possession. The record shows that Lensky had continuously possessed the subject property since acquiring his land from the Valdezes and that he undertook efforts to exclude others' access to it by erecting fences, locking gates, hanging no trespassing signs, and ordering third parties off of the property.

¶ 35    While the trial court correctly concluded that Lensky had no legal or equitable title to the subject property at the conclusion of the prior proceeding, neither the trial court's prior order nor the division's decision upholding that order addressed the parties' possessory rights.  Further, neither addressed Lensky's ongoing right to possess the subject property or prohibited him from continuing to attempt to adversely possess the property.  Therefore, because the law of the case from the prior proceeding was irrelevant to Lensky's ongoing possessory rights, the trial court erred when it found that "because Plaintiff has already been determined to not have any rights in the Subject Property, including any right to possess the property, he has no rights as a putative adverse possessor to exclude the Defendants or others from the Subject Property."  *See People v. Dunlap*, 975 P.2d 723, 758 (Colo. 1999) (Under the law of the case doctrine, "prior *relevant* rulings made in the same case are to be followed unless such application would result in error or unless the ruling is no longer sound due to changed conditions.") (emphasis added); *People ex rel. Gallagher v. Dist. Court*, 666 P.2d 550, 553 (Colo. 1983) (the law of the case

18

doctrine is a discretionary rule of practice directing that prior *relevant* rulings in the same case must generally be followed).

¶ 36    Furthermore, Lensky had the right to exclude defendants and other third parties from the subject property because, as a putative adverse possessor, he has an interest in the property "enforceable against everyone *except* the owner or one claiming through the owner." *Spring Valley Estates*, 181 Colo. at 438, 510 P.2d at 338. While the defendants argued in the trial court and argue on appeal that they and other members of the Gardner community had used the subject property for decades (riding horses, riding ATVs, children playing, and removing sand) and thus should be allowed to continue their traditional use of the property, they never claimed any ownership interest in the property, nor did they assert a right to a prescriptive easement or any other interest that is superior to Lensky's.  Indeed, defendants failed to present any evidence at the hearing of their traditional use of the property that would have proven the elements of a prescriptive easement, and we will not consider such an argument now.  *See Leggett & Platt, Inc. v. Ostrom*, 251 P.3d 1135, 1143 (Colo. App. 2010).

¶ 37    In sum, Lensky, as a putative adverse possessor, has an interest in the subject property which is enforceable against defendants and third parties.  This possessory interest gives Lensky the right to exclude defendants and others from the property, including locking the gates, erecting fences, and posting no trespassing signs.  *Spring Valley Estates,* 181 Colo. at 438, 510 P.2d at 338; *see also Uliasz,* 256 N.E.2d at 290; *Hallmark,* 301 P.2d at 528; *Howard,* 105 S.W.2d at 133.  We therefore reverse the trial court's order prohibiting Lensky from excluding defendants from the subject property.

## III. Lensky's Remaining Arguments

¶ 38    Having concluded that the trial court applied the incorrect legal standard when analyzing Lensky's rights as a putative adverse possessor, we need not reach Lensky's remaining issues.  We therefore decline to address whether the court misapplied C.R.C.P. 105, whether the court should have considered this an ejectment action, and whether the court misapplied the rulings in the prior proceeding.

## IV. Conclusion

¶ 39    We reverse the court's order granting defendants' motion for order to vacate.

JUDGE TAUBMAN and JUDGE DAILEY concur.