HENRY DOANE *vs.* THOMAS WILLCUTT.

An indenture of partition between tenants in common, which recites their seizin in fee of certain lands, and assigns a portion thereof to each to hold in severalty, and contains mutual covenants for the quiet enjoyment by each of the portion so assigned to him, does not estop one of the parties to set up an after acquired title to land so assigned to one of the others.

A conveyance of land bounded on one side " by the sea or beach " includes the land lying between high and low water mark.

ACTION OF TORT for breaking and entering the plaintiff's close in Cohasset, and cutting and carrying away cedar trees there

growing.    Answer, title in the defendant as tenant for life, in right of his wife.

At the trial in the court of common pleas, before *Byington,* J., the plaintiff, to establish his title, gave in evidence a conveyance of the land in 1822 from Ephraim Lincoln to Zenas Loring and Hawkes Loring ; a release from Hawkes to Zenas, in the lifetime of the latter, before 1833 ; and a deed from the administrator of Zenas to the plaintiff in May 1838.

The defendant gave in evidence an indenture of partition, made in April 1833, between the plaintiff and Mary his wife, the defendant and Thankful his wife, and other persons, which recited that said wives and other persons were seized in fee as tenants in common of the six acres and thirty three rods presently to be described, and of certain other lands in Cohasset, and had agreed to make partition thereof in such manner that each party should hold a certain portion in severalty, and " that the said Thankful Willcutt shall henceforth have, hold, possess and enjoy, in severalty, six acres and thirty three rods of woodland, at the island, so called ; bounded northwesterly by land of Zenas Loring, northeasterly by the sea or beach, southeasterly by land of Martha Joy and Elias Nichols, westerly by meadow of said Thankful ; " and " with each of the parties, his or their heirs, executors, administrators and assigns, the other parties do hereby, for themselves, their respective heirs, executors and administrators, covenant and grant that he or she may henceforth and forever have, hold, use, occupy and enjoy the same in severalty, free and discharged of all right, title, interest or claim whatever of them or either of them, or of their heirs or assigns, or of any persons claiming from, by or under them, or any of them."

The defendant contended that the plaintiff was estopped by this indenture to show that the parties thereto did not own the said six acres and thirty three rods, as recited and conveyed by them, or to show a mistake in the lines and boundaries ; and could not set up against his own deed of partition a title afterwards acquired from the Lorings.    And the judge so ruled.

It became a question of fact for the jury whether the alleged trespass was committed on that part of said land, lying between

28 *

high and low water mark; the defendant contending that the true construction of the boundary was the sea, and not the beach, and that the plaintiff was estopped to claim any land so bounded. But the judge ruled " that, although the plaintiff was estopped to deny the title of the defendant, acquired by said deed of partition, yet as two boundaries were given, one of which would include more land than the other, the plaintiff might show (if such were the fact) that the true northeast boundary, as owned by the parties, was the beach, and not the sea, the beach being one of the boundaries given as the northeast boundaries, though another (the sea) was given, which, if adopted, would include more land; that although, in an ordinary conveyance of land from one person to another, the rule of construction claimed by the defendant might be correct, yet this being a deed of partition, in which the recitals therein were recitals of all the other parties thereto, as well as the defendant's, the plaintiff was not estopped to show that the title was according to one of the boundaries so given; and if the beach was shown to be the true boundary of the land assigned to the defendant, he would not be estopped to claim the land between the beach and the sea, by title from Loring."

The defendant asked the judge to instruct the jury that " by the word beach was meant all the territory between the main land and the sea, over which the tide ebbs and flows." But the judge declined so to instruct the jury, and instructed them " that, though it might include such land, it was not necessarily limited to that, it being the boundary of the sea; that in this case it was a question of fact for the jury, upon the evidence introduced upon the subject, to ascertain and determine where the boundary expressed by the word beach was." The jury found a verdict for the plaintiff, and the defendant alleged exceptions.

*E. Avery,* for the defendant. 1. The indenture of partition estops the plaintiff to deny the defendant's title under it: By its general recitals. *Jackson* v. *Parkhurst,* 9 Wend. 209. *Crane* v. *Morris,* 6 Pet. 598. *Carver* v. *Jackson,* 4 Pet. 87. *Stow* v. *Wyse,* 7 Conn. 220. 1 Greenl. Ev. § 24 *& note.* By the covenant of quiet enjoyment contained in it. *Shelton* v. *Codman,*

3 Cush. 320. *Savage* v. *Mason*, 3 Cush. 505. *Fairbanks* v. *Williamson*, 7 Greenl. 96. *Brown* v. *Manter*, 1 Foster, 528. 4 Cruise Dig. (Greenl. ed.) tit. 32, *c*. 26, § 23 *note*. An indenture, as well as a deed poll, operates as an estoppel between the parties and persons claiming under them. *Jackson* v. *Hasbrouck*, 3 Johns. 331. *Bensley* v. *Burdon*, 2 Sim. & Stu. 519.

2. The meaning and effect of the term "sea or beach" in the deed was a question of law for the construction of the court, and not a question of fact for the jury. 4 Cruise Dig. (Greenl. ed.) tit. 32, *c*. 20, § 23 *note*. 23 Amer. Jurist, 280. Addison on Con. (1st ed.) 145. *Allen* v. *Kingsbury*, 16 Pick. 239. *Crawford* v. *Spencer*, 8 Cush. 418. *Cook* v. *Babcock*, 7 Cush. 526. The words "sea" and "beach" appear to be used in this deed as synonymous. But if not, still all general words or terms are to be construed most favorably to the grantee, and most strongly against the grantor. Nor is this rule necessarily to be departed from where the conveyance is by indenture. 24 Amer. Jurist, 11, 12. 4 Cruise Dig. (Greenl. ed.) tit. 32, *c*. 20, §§ 15, 17 *note*. The term "sea or beach" therefore excludes the beach, on the same principle on which "sea or flats" has been held to exclude the flats. *Saltonstall* v. *Long Wharf*, 7 Cush. 201. The true meaning of the word "beach" is that which the defendant requested the judge to give.

*J. J. Clarke & W. Colburn*, for the plaintiff. 1. The indenture of partition is only a deed of quitclaim from one party to the other; and a recital of seizin can have no greater effect than a covenant of seizin; neither of which estops a party to set up a title subsequently acquired. *Comstock* v. *Smith*, 13 Pick. 119. *Wight* v. *Shaw*, 5 Cush. 56. *Jackson* v. *Winslow*, 9 Cow. 18, 19. *Allen* v. *Sayward*, 5 Greenl. 227. *Marston* v. *Hobbs*, 2 Mass. 433. *Bearce* v. *Jackson*, 4 Mass. 408. *Chapel* v. *Bull*, 17 Mass. 213. 1 Greenl. Ev. § 24.

2. The word "beach" is not necessarily limited to land where the tide ebbs and flows; and the boundary expressed by this term, as used in the deed, was properly left to the jury as a question of fact. *Brown* v. *Lakeman*, 17 Pick. 444. *Williston* v. *Morse*, 10 Met. 17. Or if there is a difference in the meaning

of the words " beach " and " sea," the object in inserting both in the alternative was that they might take effect according to what was by law the line of the title of the parties.    The rule, that words are to be construed most strongly against the grantor, does not apply to an indenture.    2 Bl. Com. 380.    4 Cruise Dig. tit. 32, *c.* 20, § 17.    *Storer* v. *Freeman*, 6 Mass. 435.

SHAW, C. J.    From the manner in which this case is presented, we are apprehensive that the precise matter in controversy is not well understood.    The gravamen of the complaint is the unlawful entry of the plaintiff's close in Cohasset, and cutting cedar trees there growing ; and in another part of the case it is stated, that it became a question of fact for the jury whether the alleged trespass was committed on that part of the said land lying between the beach and the sea, both being given as boundaries.    Supposing the two distinct lines in the partition deed mean two distinct lines of boundary, which we shall consider hereafter, the " sea " must mean " low water line," and the " beach " some part above it.    How cedar trees, or any other wood, could grow on soil washed by the salt water at every tide, it is impossible to conceive, and we think there may be something omitted which would make the whole case intelligible. But perhaps sufficient appears to enable us to express an opinion upon the points raised in the argument.

1. The case comes before us on the exception of the defendant; but a point was decided in favor of the defendant, to which the plaintiff excepts ; and as this lies at the foundation of the suit and must present itself again on a new trial, and as it has been argued on both sides, we will first consider it.

There is no doubt that the parties to an indenture are bound and estopped against each other, in the same manner as by any other form of specialty ; and where wives join with their husbands in conveying their estates the lands pass by the conveyance, and the wives are bound by the estoppels, though, from their legal incapacity to bind themselves, they are not liable to actions on their covenants.    *Colcord* v. *Swan*, 7 Mass. 291.

But still the question recurs, To what extent do the recitals and covenants of a deed bind the party, and from what acts and

claims do they estop him? The indenture in the present case is a deed of partition, in which the plaintiff and his wife and the defendant and his wife are respectively parties; it recites that they, with the other parties named, are tenants in common in fee simple of certain lands described; and it proceeds to assign to each party a part described, to hold in severalty. These recitals and conveyances are followed by a qualified covenant, in which each party—say the plaintiff and wife, with each of the other parties—say the defendant and wife, for and with their respective heirs and assigns, do covenant and grant that he or she shall forever have and hold the same in severalty, free and discharged of all right, title, interest or claim of them or either of them.

Now supposing that the recital in the partition deed does definitely describe the lot of land in which the trespass is alleged, and also does definitely describe the same lot as embraced in the purparty of Willcutt, then this deed does estop the plaintiff from denying that the parties were seized as tenants in common; that, by force of the conveyance, the defendants become seized in fee, in severalty, of the purparty assigned; and that all the right, title and interest which the plaintiff then had in the premises passed to the defendant; and the qualified covenant carries it no further. It cannot have greater force than a direct covenant of seizin, which is not broken by the existence of an outstanding paramount title. It is a covenant that all the right, title and interest which the plaintiff then had, together with a seizin *de facto* as against him, his heirs and assigns, passed to the defendant. But we think it does not estop him from now asserting, and maintaining by proof, that at the time of the partition a third party held an outstanding paramount title, superior to that of either of these parties, and that the plaintiff afterwards acquired that title, and now relies upon it as a good and valid title. It admits that he was then seized, (not of an indefeasible title, but *de facto*,) that all the interest he then had passed to the defendant, and that he became seized *de facto* as against the plaintiff, by force of the conveyance. *Comstock* v. *Smith*, 13 Pick. 116. *Wight* v. *Shaw*, 5 Cush. 56.

This case is clearly distinguishable from that of a conveyance of land, with a general covenant of warranty against the lawful claims of all persons.　There, if there be an outstanding title, and the grantor with such warranty acquires such title, it enures, without further act, to the use of his grantee, and operates, by way of estoppel, to confirm and make good the title he has warranted.　It stands substantially upon the principle which gives force and effect to an estoppel, in order to avoid circuity of action.　A general warranty is supposed not only to bind the grantor, but his privies in blood and estate, that is, all who could claim under him.　If therefore the grantor, or any such party, privy in blood or estate, on whom such obligation to warrant has descended, should sue the original grantee and recover the land on such after acquired title, the party thus evicted will have a remedy on his warranty against the party who has evicted him, for an equivalent value.　To avoid this circuity, the party holding under such a warranty may rely on it, by way of estoppel against the grantor or any one claiming under him. No such estoppel can be claimed under this deed of partition; because it contains no general warranty.

As the case now stands, it appears to us that the plaintiff was not estopped by his deed of partition from setting up the title proposed.　The burden is clearly on him to show that, notwithstanding the premises were embraced in the partition, and included in the purparty of the defendant's wife, still a better and paramount title was then held by Zenas Loring, that he died seized of it, that it was duly sold under legal authority, and purchased by the plaintiff, after the deed of partition, and was claimed and held by him at the time of bringing this action.

2. The other exception arises from the ruling of the court upon the construction of that clause in the deed of partition which assigns to Thankful Willcutt, in severalty, a lot bounded " northeasterly by the sea or beach."

The bill of exceptions and the direction of the court assume that here were two distinct lines of boundary mentioned, namely " the sea," or "the beach."　They assume that there was some area or land lying between the beach and the sea, both being

given as the northeast boundary. It appears to us that this was an erroneous view of the construction of the deed; that it designated not two lines, but one line, indicated by two words used synonymously.

All terms of description in conveyancing must be construed according to their natural force and effect in the use of language, and especially as applied to the subject matter in regard to which they are used. The term " beach " we consider, when used in reference to places anywhere in the vicinity of the sea, or arms of the sea, as having a fixed, definite meaning, comprising the territory lying between the lines of high water and low water, over which the tide ebbs and flows. It is, in this respect, like " shore," " strand," or, as much used in this country, " flats." The term "shore" is well defined in *Storer* v. *Freeman,* 6 Mass. 439, to be the territory lying between high and low water mark, and of course having two sides, the land side and the sea side. In a conveyance, when a line of " shore" is used as an abuttal, unexplained by circumstances, it may be ambiguous, leaving it doubtful whether the sea side or the land side of the shore is intended. In general, it will appear by the context which The term " beach," however, is usually applied to this part of the coast, when not covered with water, when the tide is out. Then, when both terms are used, " the sea " or " shore," and used to designate one boundary, it appears quite clear that they were intended to describe that one side of the beach, on which the sea coincides with it, and therefore to include the beach to low water mark. This conclusion is strongly confirmed by the existence of the well known rule of law, founded perhaps originally in the Colony Ordinance of Massachusetts of 1647, but now established by usage, as the law of New England, that in all places about and upon salt water, where the sea ebbs and flows, the proprietor shall have propriety to low water mark, contrary to the rule of the English common law. The owner of the upland adjoining tide water *prima facie* owns to low water mark; and does so in fact, unless the presumption is rebutted by proof that the upland and flats have been severed by himself or some previous owner, by the conveyance of the one

without the other, in whole or in part.  When therefore such owner of the shore conveys by a boundary on the " sea," or " sea shore," or " tide water," or any similar expression, the law gives effect to it, and extends it to low water mark.

The court having declined so to instruct the jury, but having assumed that two distinct lines on the sea shore side of the tract conveyed were intended by the description, leaving a space be- tween them, we are of opinion that the direction was incorrect that the exception of the defendant must be sustained, and a

*New trial had in the court of common pleas.*