Bernard H. BAUMRIN

v.

Francis F. COURNOYER.

Civ. A. No. 70–418–C.

United States District Court,
D. Massachusetts.

May 12, 1976.

Jonathan B. Altschuler, New York City, for plaintiff.

Charles R. Desmarais, New Bedford, Mass., for defendant.

## OPINION

CAFFREY, Chief Judge.

This is a civil action in the nature of a complaint to quiet title to a parcel of real estate located on Martha's Vineyard in West Tisbury, Massachusetts. Jurisdiction of this court is based on diversity of citizenship and the claim that the amount in con-

troversy exceeds $10,000. Defendant's answer puts in issue whether the amount in controversy does, in fact, exceed $10,000.

The case has a long history in this court, having been commenced in March of 1970. Several hearings were held before another Judge of the court on matters ranging from motions for discovery and for injunctive relief to motions to dismiss and for summary judgment. In addition, after a hearing, the parties stipulated to an examination of title to the disputed parcel by a mutually acceptable title examiner and to share equally in the cost of the examination. The parties also agreed that after a final determination of the instant dispute the prevailing party would be reimbursed by the losing party for his share of the cost of the title examination. The title report was made and filed on October 15, 1974.

Following submission of the title examiner's report the defendant, in whose favor the title examiner found, moved to confirm the report and for entry of judgment on the basis of the report. After a hearing, these motions were denied by the Court.

The matter came on for a non-jury trial. The report of the title examiner was admitted into evidence over the plaintiff's objection. The report is one of twelve exhibits proffered, ten of which were admitted into evidence. Those exhibits, together with the testimony of five witnesses, form the record.

The title examiner testified and was cross-examined extensively as to his methods of investigation, and as to his conclusions as to the state of the title to the disputed parcel. Other witnesses at the trial were the plaintiff, Allan Miller (the person through whom the plaintiff claims title to the disputed parcel), Emily Rose (the Registrar of Probate for Dukes County), and Charles White (a civil engineer and land surveyor who assisted the title examiner in certain aspects of his report and who testified as to his personal on-site observations of the disputed parcel). Post-trial memoranda, requests for findings of fact and conclusions of law, and replies to those

requests having been filed by both parties over a protracted period of time, the Court now makes its findings of fact and conclusions of law as follows:

This is an action by plaintiff to quiet title to certain land allegedly purchased by him on February 6, 1969 in West Tisbury, Massachusetts. The defendant is a prior alleged owner of the property. Plaintiff is a resident of the State of New York and defendant is a resident of the Commonwealth of Massachusetts.

The instant dispute generally concerns title to a parcel of land falling within an area of approximately 45 acres situated in that part of West Tisbury known as "Christiantown," on the island of Martha's Vineyard. The entire area was set aside as "Indian Lands" in 1828, and specific parcels were set off to various individuals pursuant to legislative direction.

A certain part of the 45-acre tract was set off to one Recall DeGrass. In 1855, the heirs of Recall DeGrass, together with a surveyor, divided the DeGrass tract into eight smaller parcels, each being carefully bounded and described by compass bearings measured in degrees. A plan of the 1855 division appearing in the title examiner's report is appended hereto. Distances were measured in rods and links, the then prevailing form of land measurement. The eight parcels were assigned the following numerical designations:

Parcels # 1 and 2 to James DeGrass;
Parcels # 3 and 4 to Caroline Francis, who later became Caroline Tillman;
Parcels # 5 and 6 to George DeGrass; and
Parcels # 7 and 8 to William Jeffers.

The precise subject matter of the instant dispute is the devolution, description, right of access to, and water rights appurtenant to an approximately 3.38 acre portion of the parcel designated above as parcel # 8. More specifically, the dispute as to title concerns the northerly portion of parcel # 8. Hereinafter the area in dispute will

be referred to as the "disputed" or the "subject" parcel.

The 1855 deed, which created the eight parcels, contained the following language:

"Reserving the watering place and the land adjoining the same for the accommodation of all the heirs and assigns of said Recall DeGrass and his family as mentioned in said record dated September 29, 1928.

It is clearly understood by all parties herein concerned that a *road one rod wide is reserved bounded as follows*:

Beginning at the East corner bound of the lot set off to James DeGrass and on the southwest side of Samuel Mingo's wall being the land or lot on which said James dwelling house stands:

To take its width one road southeast of this line and to include the land and springs of water on the northwest side of said line and near the south corner of the land set off to said Jeffers and adjoining said road.

Being for the accommodation of said parties and their assigns forever.

It is also understood that all the parties herein concerned shall have liberty to pass and repass with carts, teams, etc. to and from their respective lots of land to springs of water in the usual manner."

I find that the quoted language reserves to the owner of parcel # 8 water rights and right of access to the disputed parcel. I find, further, that the testimony of Edward DeWitt and Charles White establishes that evidence of the road to the well expressly reserved in the 1855 division is still visible on the ground.

The question next to be resolved is who owns title to the disputed parcel.

The plaintiff claims that the defendant, by quitclaim deeds, conveyed an area of real estate including the disputed parcel to one Allan Miller. Plaintiff alleges that at the time of defendant's conveyance to Miller, the defendant fraudulently induced Miller to buy land that the defendant did not actually own.

Plaintiff further alleges that on or about August 11, 1966, in a transaction recorded in Book 263, page 36, Dukes County Registry of Deeds, Miller conveyed part of the lands he received from the defendant to one Kenneth Jones with quitclaim covenants, and further alleges that on February 6, 1969, Miller conveyed to him with quitclaim covenants all the remainder of the land acquired from defendant in a transaction recorded in Book 276, page 262, Dukes County Registry of Deeds.

Plaintiff alleges that at the time of the last described conveyance, plaintiff's title search revealed that part of the parcel to be conveyed (and part of the parcel previously conveyed to Jones) was not owned by defendant at the time of defendant's conveyance to Miller, but that subsequently the defendant "after-acquired" the then outstanding interests therein. It is the land making up this allegedly after-acquired interest that is the subject matter of the instant dispute.

Defendant admitted that on or about April 25, 1966, he conveyed land with quitclaim covenants in West Tisbury to one Allan Miller (described in the Registry at Book 261, page 387), but denied ever having represented to Miller what estate was intended to be conveyed by walking the bounds of such estate. The defendant further denied ever having represented to Miller that he had "good marketable title" to all the said estate.

The defendant admitted in his answer that at the time of the April 25, 1966 transfer to Miller, he did not have title to the disputed parcel of land.

The report of the title examiner was admitted into evidence as expert testimony. It concluded that title to the disputed parcel was in the defendant. The title examiner properly found that the instant dispute

arose in large part due to the misdescription of a parcel of land, which misdescription appeared in the following series of conveyances dating from 1866:

### DEVOLUTION OF RECORD TITLE
### USING THE SAME DESCRIPTION OF THE PROPERTY

| Grantor | Grantee | Date Signed | Date Recorded | Record Reference | Type of Conveyance |
|---------|---------|-------------|---------------|------------------|--------------------|
| Caroline Tillman | Sanderson Mayhew Co. | 9/17/1886 | 9/29/1886 | Bk. 76 p. 329 | Mortgage Deed |
| Sanderson M. Mayhew Co. | Clofus L. Gonyon | 8/10/1900 | 2/19/1906 | Bk. 118 p. 411 | Power of Sale Deed |
| Clofus L. Gonyon | Thomas J. DeMont | 12/27/1924 | 3/1925 | Bk. 165 p. 568 | Quitclaim Deed |
| Thomas J. DeMont | Francis F. Cournoyer et Ux | 9/ 9/1959 | 12/18/1959 | Bk. 238 p. 186 | Quitclaim Deed |
| Francis F. Cournoyer et Ux | Allan Miller et Ux | 2/25/66 | 5/ 5/1966 | Bk. 261 p. 387 | Quitclaim Deed |

Each of the above conveyances contained the same description of the land purportedly being conveyed. The instant controversy over title is the direct result of an erroneous description of the land which first appeared in the Tillman to Sanderson M. Mayhew Co. mortgage deed of 1886 and was repeated in subsequent conveyances. The title examiner found, and I adopt this finding as factual, that Tillman's mortgage deed purported to mortgage more land than Tillman actually owned. The description carried forward in all conveyances noted above is as follows:

"On the East by the heirs of Samuel Mingo;

On the South by land of Edwin A. Luce;

On the West by land of Edwin A. Luce; and

On the North by land of George DeGrass; Containing 9 acres, more or less."

I find that this description purported to mortgage a total of 23½ acres while, in fact, Tillman actually owned only approximately 9 acres of land. The erroneous description when carried forward led to further erroneous subdivisions of the land, so that when the plaintiff purchased his parcel from Miller by quitclaim deed on February 6, 1969, the disputed parcel, although within the description of land purportedly conveyed, was in fact not owned by Miller.

Plaintiff contends that whether the subject description was "accurate" or not is irrelevant, because the defendant, having conveyed land purportedly within that description to Miller (who thence conveyed to the plaintiff), is thereby estopped from now asserting title to any land within the description. In addition, plaintiff objects to the title examiner's method of analysis of the long series of conveyances in that the examiner used allegedly prejudicial maps, lot numbers and parcel numbers.

I rule that plaintiff's objections to the introduction of the title examiner's report into evidence are without merit. I also find that the plaintiff's objections to the substance of that report are, for the following reasons, similarly without merit.

The erroneous description of the land Caroline Tillman mortgaged to the Mayhew Co. included within it more land than Tillman actually owned. Tillman's mortgage was foreclosed and a deed under a power of sale was given to Clofus L. Gonyon on August 10, 1900, recorded in Book 118, page 411. The title examiner determined, and I find, that in spite of this erroneous description, several subsequent transfers of land owned by Tillman indicate that the parties were aware of the prior erroneous description, and thereafter purported to convey only the land *actually* owned by Tillman (see Report of Title Examiner, pp. 7–9).

I further find significant the title examiner's conclusion that

"A simple comparison of the deeds into Caroline Francis (Tillman) and the subse-

quent mortgage out from her to Sanderson M. Mayhew Company should have put anyone on notice that she [Tillman] was purporting to mortgage more than she owned . . ."

Report, p. 23.

In a very significant finding, which I adopt, the title examiner notes (Report, p. 8) that a comparison of the description in a deed conveying land to Gonyon from Joseph O. Mingo (dated May 17, 1906, recorded in Book 133, page 184) with the description of the land conveyed to plaintiff from Allan Miller shows that the latter deed purports to convey more land (specifically the land in dispute herein) than Miller ever received from the defendant. The title examiner concluded, and I concur in this conclusion and rule as a matter of law, that since the deed from Miller to the plaintiff purports to convey more land than Miller ever in fact received from the defendant, the deed from Miller into the plaintiff cannot serve as a basis for a claim to title of the disputed parcel by the plaintiff by the theory of estoppel by deed. It is to be noted that the April 25, 1966 deed from the defendant to Miller, recorded in Book 261, page 387, used the same erroneous descriptions and erroneous references to abutters used in the Tillman to Mayhew mortgage and in subsequent deeds. The deed from the defendant to Miller was with quitclaim covenants.

■ Plaintiff bases his claim of title to the disputed parcel both on the theory of estoppel by deed and on the alternative theory of adverse possession. Dealing with plaintiff's alternative theory first, I find that at the trial of this matter the plaintiff failed to carry his burden of proving the elements necessary to establish title to the disputed parcel by adverse possession. Plaintiff claimed, but utterly failed to prove, that his predecessors in title to the disputed parcel had perfected their title therein by adverse possession.

■ In order to establish title by adverse possession there must be proof of non-permissive use which is actual, open, continuous, exclusive, adverse, and under claim of right or title for twenty years. *Ryan v.*

*Stavros,* 348 Mass. 251, 203 N.E.2d 85 (1964); *Mendonca v. Cities Service Oil Co. of Pa.,* 354 Mass. 323, 237 N.E.2d 16 (1968); *Wilcox v. Sarris,* 331 Mass. 701, 122 N.E.2d 362 (1954). The plaintiff failed to prove even a single one of the elements necessary to establish title by adverse possession.

■ Moving next to the plaintiff's claim to title by operation of the doctrine of estoppel by deed, I rule that the doctrine is inapplicable to the case at bar. Here, the defendant conveyed property by quitclaim deed to plaintiff's grantor, Miller. The defendant subsequently acquired the subject parcel which, even assuming it was contained within the description of the land the defendant conveyed to Miller, was erroneously included therein. I find it significant in making this ruling that by plaintiff's own admission at the trial he failed to have either of two parcels he purchased from Miller surveyed prior to the purchase, and failed to have the title searched to the parcel he bought from Miller which abuts the disputed parcel.

This testimony is all the more significant in view of the title examiner's observation noted above that a simple comparison of the deeds into Tillman with the mortgage out from her to the Mayhew Co. would have put anyone on notice that she was purporting to mortgage more than she owned.

The testimony at the trial clearly established, and I find, that Emily Rose, a partner of the plaintiff in land ventures on Martha's Vineyard, made a search of title of the subject parcel for the defendant in 1969. On the basis of her examination at that time she suggested to the defendant that in order to perfect his title to the disputed parcel he should obtain the outstanding interests in the property. This, it is clear, the defendant did. However, no evidence was presented at the trial by plaintiff to establish that defendant's subsequent acquisition of all the outstanding interests was ineffective to place clear record title in the defendant. Further, plaintiff failed to support his claim that the defendant fraudulently induced the holders of the outstanding interests to the subject parcel to sell their interests to him, even assuming

that proof of such fraud could have advanced the plaintiff's cause herein.

No credible evidence was presented at the trial which supported plaintiff's claim that the defendant fraudulently induced Miller to buy land which the defendant knew he did not own, or that the defendant represented to Miller that he had "good marketable title" to the disputed parcel. Further, I do not credit the plaintiff's testimony that the defendant walked with Miller along the boundary lines of the property the defendant allegedly conveyed, which property allegedly included the disputed parcel. In short, plaintiff failed to prove that the conveyance from the defendant to Miller included any agreement or representation as to the state of the title, except for the quitclaim covenants found in the deed.

■ The general rule regarding estoppel by deed is that a conveyance with warranty estops the grantor to deny the grantee's title when he afterwards becomes the owner of the land purported to be granted. *Starr v. Long Jim,* 227 U.S. 613, 33 S.Ct. 358, 57 L.Ed. 670 (1913).

■ It is well-established, however, that a mere quitclaim deed is ineffectual by force of estoppel to pass to the grantee, or those holding under him, any title or right acquired by the grantor subsequent to the execution of the quitclaim deed.

"A deed of this character purports to convey, and is understood to convey, nothing more than the interest or estate of which the grantor is seized or possessed at the time; and does not operate to pass or bind an interest not then in existence. The bargain between the parties proceeds upon this view; and the consideration is regulated in conformity with it."

*Van Rensselaer v. Kearney,* 52 U.S. 297, at 322, 13 L.Ed. 703, at 713 (1850). The Massachusetts cases adopt this view of the quitclaim deed. *Comstock v. Smith,* 30 Mass. (13 Pick.) 116 (1832); *Wright v. Shaw,* 59 Mass. (5 Cush.) 56 (1849); *Miller v. Ewing,* 60 Mass. (6 Cush.) 34 (1850); *Doane v. Willcutt,* 71 Mass. (5 Gray) 328 (1855); *Tarbell v. Page,* 155 Mass. 256, 29 N.E. 585 (1892).

For the above-stated reasons I find and rule that:

■ 1. The plaintiff has utterly failed to prove that he has title to the subject parcel. Rather, as the title examiner correctly found, good record title to the subject parcel is in the defendant.

2. Evidence of the road across the subject parcel referred to in the early deeds does exist on the ground as testified to by both the title examiner and Charles White.

■ 3. The rights to use the road and to take water from the springs are part of the bundle of rights incident to ownership of the subject parcel, and have not been lost through disuse, nor have they been conveyed away or surrendered by any recorded instrument. Accordingly, such rights may be exercised by the defendant or any subsequent grantee of the subject parcel.

■ 4. The plaintiff has failed to establish the existence of the jurisdictional amount of $10,000. No evidence whatsoever as to the value of the unimproved parcel in dispute was adduced during the course of the trial.

■ 5. The parties, Baumrin and Cournoyer, entered into and signed a stipulation, filed in court, that Edward DeWitt was to examine the title and that

"the parties shall equally share the cost of his title examination and in the event of a final determination then the prevailing party shall be entitled to be reimbursed for his share of said title examination,"

and, therefore, it is ordered that plaintiff Bernard H. Baumrin comply with the said stipulation.

Judgment in accordance with this opinion.

See Appendix on next page.

APPENDIX

Plan of Division of
Heirs of Recall Degrass in Christiantown
October 25, 1855   Recorded 37-365
Scale 1" = 200'