SUSSE CHALET INN OF HOLYOKE, INC. vs. HOWARD D.
JOHNSON COMPANY.

Hampden. April 15, 1981. — June 5, 1981.

Present: BROWN, CUTTER, & KASS, JJ.

*Landlord and Tenant*, Assignment of lease, Estoppel by lease. *Estoppel.*

Where a lessee of certain property had, prior to his acquiring the lease-
hold under a 1960 lease, executed a sublease of the property as presi-
dent of a corporation and not in his individual capacity but the sub-
lessor's interest was subsequently assigned by the corporation to the
lessee at a time when he still held the lessee's interest in the 1960 lease;
and where both the lessee interests and the sublessor interests were
later acquired by copartners whose acceptance of rent from the
sublessee over a fourteen-year period constituted an election to be
bound by the sublease; and where the assignee of the copartners' in-
terests in the lease and sublease accepted a recorded assignment of the
lease "subject to" the 1960 lease and sublease, equitable considerations
required that the assignee be estopped to deny the validity of the sub-
lease. [33-38]

CIVIL ACTION commenced in the Superior Court on April
6, 1978.

The case was heard by *Griffin, J.*, on a master's report.

*Burton S. Resnic* for the plaintiff.

*Harry Zarrow* for the defendant.

CUTTER, J.  One Krumpholz owns in fee, and has owned
at least since 1960, four contiguous parcels of land (the four
parcels).  Rene G. Lucier (who as stated below obtained
from Krumpholz on August 12, 1960, a lease of the four par-
cels) planned to erect a restaurant on the portion of the four
parcels near the street (hereafter sometimes referred to as
the restaurant premises) and a motel on the rear land.
Lucier was then president of 333 Columbus Avenue, Inc., a
Massachusetts corporation (333).

On August 9, 1960 (prior to the lease from Krumpholz to Lucier), 333, as lessor, executed a lease (the 1960 sublease) to the defendant (Howard Johnson) of the restaurant premises. Lucier signed the 1960 sublease as president of 333 but did not sign it separately as an individual. Although not named individually as a lessor in the body of the 1960 sublease, Lucier acknowledged, both as an individual and as president of 333, before a notary public on August 9, 1960, not only the 1960 sublease itself, but also a "Declaration of Lease" intended for recording. The certificate of acknowledgment described him as having "executed the foregoing instrument as 'Lessor.'" The 1960 sublease itself contains a paragraph entitled "Warranty of Title" which includes a covenant of quiet enjoyment.

As stated above, Krumpholz, on August 12, 1960, gave to Lucier a ground lease of all the four parcels (the four-parcel lease). The four-parcel lease (in the event of certain extensions) could extend for sixty years in the aggregate. Notice of this lease was recorded. A Howard Johnson restaurant was built on the restaurant premises and has been occupied by Howard Johnson since its completion in 1960 or 1961. The plaintiff (Susse Chalet), by its complaint filed April 6, 1978, asserts that it acquired in 1977 the four-parcel lease and that Howard Johnson continues to occupy the restaurant building, claiming under the lease of August 9, 1960, although given notice by Susse Chalet to vacate the premises by January 31, 1978.

The case was referred to a master. His report makes subsidiary findings of the facts already stated and makes other relevant subsidiary findings which are stated chronologically in the appendix to this opinion.

On the subsidiary findings, including those mentioned in the appendix, the master made the following ultimate findings among others. (a) On August 9, 1960, 333 had no interest in the restaurant premises. (b) The 1960 sublease gave Howard Johnson no rights in the restaurant premises as to Krumpholz and those claiming under him. (c) Lucier was not a party to the 1960 sublease. His acknowledgment

of it before a notary public "is a nullity." (d) On February 16, 1977, Susse Chalet was put on notice of the 1960 sublease of August 9, 1960 (but the master concluded that this did not affect Susse Chalet's rights because he regarded the 1960 sublease as invalid as to persons not parties to it). (e) Since February 1, 1978, Howard Johnson has remained in possession of the restaurant premises "as a tenant at sufferance" because of Susse Chalet's notice to quit. Counsel for Howard Johnson filed objections to the preceding five ultimate findings and moved that they be struck from the master's report. The master also purported to rule that the "doctrine of estoppel by lease is not the law in this Commonwealth." The trial judge properly disregarded this ruling. See *O'Brien* v. *Dwight*, 363 Mass. 256, 282 (1973). She treated the master's unchallenged subsidiary findings as binding on the court and correctly ruled that she could draw her own inferences from the master's subsidiary findings. *Jet Spray Cooler, Inc.* v. *Crampton*, 377 Mass. 159, 180 (1979). For reasons discussed more completely below, she granted Howard Johnson's motion to strike the last four of the specified ultimate findings of the master and ordered judgment entered that Susse Chalet was not entitled to possession of the restaurant premises but was entitled to the rents tendered under the lease or sublease of August 9, 1960.

1. Susse Chalet accepted on February 16, 1977 (see Appendix, par. (n), *infra*) an assignment of the four-parcel lease "subject to" that lease and the 1960 sublease of the restaurant premises. Acceptance of this recorded assignment estops Susse Chalet to deny the validity of the 1960 sublease. This result is well established with respect to conveyances made subject to a mortgage. *Tuite* v. *Stevens*, 98 Mass. 305, 307-308 (1867). *Cheffee* v. *Geageah*, 253 Mass. 586, 589 (1925). See *Brown* v. *South Boston Sav. Bank*, 148 Mass. 300, 304 (1889). Compare *Cleaveland* v. *Malden Sav. Bank*, 291 Mass. 295, 296-297 (1935). A similar view exists with respect to acceptance of a conveyance or assign-

ment "subject to" a specified easement. *Uliasz* v. *Gillette*, 357 Mass. 96, 102-103 (1970). See *Walker* v. *E. William & Merrill C. Nutting, Inc.*, 302 Mass. 535, 540-541 (1939). In *Hixon* v. *Starr*, 242 Mass. 371, 373-374 (1922), it is strongly suggested that the principle may also apply to leases, although it was not necessary to decide the question in that decision. There the father of the owner of property gave to a lessee a lease of it without authority from his daughter. Thereafter, the daughter conveyed the property to another by deed which recited that the premises "were 'free from all incumbrances' except a mortgage, taxes, and a 'certain lease.'" *Id.* at 373. The grantee had knowledge that the lease existed but denied knowledge of the covenant to repair. In holding that the lessee could not recover from the grantee on the covenant to repair, the court said (at 374), "The deed to the . . . [grantee] did not by its terms purport to create rights in favor of the . . . [lessee], *nor did it convey the land subject to the lease.* At the most the words indicate that the lease was excepted from the operation of some covenant. Consequently the deed did not estop the grantee as against the plaintiff from claiming that she was not bound by the lease" (emphasis supplied). The emphasized language at least implies that the grantee would have been bound if she had taken the deed "subject to" the lease. We need not speculate whether today the fact that the lease was "excepted" from the operation of a covenant against incumbrances would have been construed in effect as making the conveyance "subject to" the lease. See *Snyder* v. *Sperry & Hutchinson Co.*, 368 Mass. 433, 443 (1975). See also, as supporting the principle that "one purchasing land [or an interest in land] subject to an outstanding interest is estopped to deny . . . [the] validity" of that interest, *Carter Oil Co.* v. *Delworth*, 120 F.2d 589, 591 (7th Cir. 1941); *Luly Stores Co.* v. *Hartman*, 235 Ill. App. 319, 321 (1925); *Elliott* v. *Moffett*, 365 Pa. 247, 252 (1950) ("one claiming under a deed is bound by any recognition it contains of title in another").

2. At various times in the course of the transactions affecting the four parcels in 1960 and thereafter, the four-parcel lease and the lease of August 9, 1960, have been in the same ownership. It may well be that 333 as a corporation was wholly owned by Lucier. That, however, is not a subsidiary fact found by the master and there is insufficient basis for an inference that this was the fact. In the absence of any subsidiary findings by the master of the facts concerning the relationship between Lucier and 333, we are not in a position to consider whether in 1960 there was practical identity between Lucier and 333. Compare *My Bread Baking Co.* v. *Cumberland Farms, Inc.,* 353 Mass. 614, 617-620 (1968); *Gopen* v. *American Supply Co.,* 380 Mass. App. Ct. 342, 344-345 (1980).

a. On April 30, 1963, persons then at least potentially possessing some part of the lessee's interest under the four-parcel lease purported (see par. [k] in the Appendix, *infra*) to cancel a lease or sublease from Lucier to 333, dated August 9, 1960. This cancellation may warrant an inference that such a lease existed at some time. If it did exist, Lucier, once he obtained from Krumpholz the four-parcel lease on August 12, 1960, acquired a leasehold interest which in good conscience immediately should be treated as validating Lucier's 1960 sublease to 333 and 333's 1960 sublease to Howard Johnson, under a doctrine analogous to, or in effect a part of, that of estoppel by deed.

Susse Chalet questions whether the principles of estoppel by lease (see Annot., 51 A.L.R. 2d 1238 [1957]; see also Annots., 58 A.L.R. 345 [1929] and 144 A.L.R. 554 [1943]) are accepted in Massachusetts. We are of opinion that, in these present circumstances, equitable considerations require the application of these principles and that the trial court properly applied them in effect as a corollary of, or by analogy to, the doctrine of estoppel by deed. See *Ayer* v. *Philadelphia & Boston Face Brick Co.,* 159 Mass. 84, 87 (1893); *Mt. Washington Coop. Bank* v. *Benard,* 289 Mass. 498,

500-501 (1935). See also 3 American Law of Property §§ 15.17-15.21, 15.23-15.24 (Casner ed. 1952); 4 Tiffany, Real Property § 1230 (3d ed. 1975). One Massachusetts text in general terms essentially adopts this view. See Hall, Massachusetts Law of Landlord and Tenant § 9 (4th ed. 1949), which is set out in the margin.[1] See also §§ 227-229

b. In any event, the four-parcel lease and the 1960 sublease came into the same ownership on September 25, 1961, when 333, acting again through Lucier, assigned that sublease to Lucier. He had participated for 333 in making the 1960 sublease, which contained a strong but inaccurate warranty of title and covenant for quiet enjoyment. He had acknowledged 333's 1960 sublease individually. When Lucier in 1961 himself obtained the sublessor's interest in the 1960 sublease at a time when he also held the lessee's interest under the four-parcel lease, every consideration of fairness required (1) that his possession of the lessee's interest in the four-parcel lease of August 12, 1960, inure to the benefit of Howard Johnson as sublessee of the 1960 sublease (of August 9, 1960) and (2) that those claiming under Lucier be estopped to deny the validity of the 1960 sublease to Howard Johnson. The record does not disclose any persons who are in the position of bona fide purchasers of an interest in the four-parcel lease, without notice of the deficiencies, if

---

[1] "Section 9. *Tenancy by estoppel.* In the same way in which a tenant, having entered into the relation of landlord and tenant by demise and occupation of the premises, is estopped to deny his landlord's title, or a landlord is estopped to deny his lease, so *one who has leased premises, whether by parol or written lease, having no title at the time of his demise, is bound by the lease if he afterward acquire[s] the land,* and if the true owner has meanwhile done nothing to disturb the efficacy of the lease. But where the lessor has some interest, there is no estoppel, and any subsequent acquiring by him acts by way of confirmation; and the same is true where several persons join in a lease and one only has an interest. An assignee of a landlord or tenant by estoppel stands in as good a position as his assignor and may sue on the covenants of the lease" (emphasis supplied and references to footnotes omitted). See also Schwartz, Lease Drafting in Massachusetts §§ 2.2, 2.3 (1961).

any, in the 1960 sublease, so we have no occasion to consider the position of any such bona fide purchaser.

We are not convinced by Susse Chalet's argument that the doctrine of estoppel by deed (as well as its subdivisions or corollaries) requires that the after acquired interest of the grantor or lessor be a fee interest. The same considerations of fairness apply to a later acquired ground lease like the four-parcel lease, which gives support to the premature 1960 sublease, as would apply if Lucier had later acquired the fee to the four parcels. To the extent of Lucier's after acquired interest in the four-parcel lease of August 12, 1960, although less than a fee, that interest should inure to the benefit of Howard Johnson and its successors in interest. See as to cases where the defective instrument is a quitclaim instrument not containing a relevant warranty or covenant, *Baumrin* v. *Cournoyer*, 414 F.Supp. 326, 331-332 (D. Mass. 1976).[2]

c. If on June 1, 1963, by virtue of the instruments mentioned in the Appendix, pars. (h), (i), (j), (k), and (l), *infra*,[3] all the then valid lessee interests in the four-parcel lease and all the valid sublessor interests in the 1960 sublease to Howard Johnson were united in the copartners of Mt. Tom Motor Lodge Associates, there was then a recognition at least by all the copartners that both the four-parcel lease and the sublease were then still in existence. The conduct of the copartners of Mt. Tom Motor Lodge Associates in accepting from 1963 to 1977 rent tendered to them by Howard Johnson under the 1960 sublease was consistent

---

[2] Because the 1960 sublease contained an express warranty of title and covenant of quite enjoyment, we need not consider whether such a warranty or covenant is essential to give rise to estoppel by lease in view of the circumstance that, in leases, the demise itself usually creates a somewhat limited implied covenant of quiet enjoyment. See Restatement (Second) of Property, Landlord and Tenant § 4.3, Comment b, and § 16.3 (1977); 1 American Law of Property §§ 3.47-3.48 (Casner ed. 1952); Hall, Massachusetts Law of Landlord & Tenant § 207, *supra*. Compare *Taylor* v. *Lassell*, 4 Mass. App. Ct. 539, 541-542 (1976).

[3] Later supplemented by the termination of the lease mentioned in the Appendix, par. (k) on December 15, 1976; see par. (m).

with the theory that, by operation of law, the benefits of the four-parcel lease by then had inured to Howard Johnson as sublessee of the 1960 sublease. The acceptance of rent by these copartners constitutes an acceptance by them of, and an election to be bound by, the 1960 sublease in their capacity as holders of the lessee's interest in the four-parcel lease. See the slightly analogous circumstances considered in *Selig* v. *Kopsiaftis*, 357 Mass. 91, 93-94 (1970).

We infer that the confused situation arose from the failure in 1960 of Lucier and his attorneys to make certain that all then contemplated instruments were then executed and recorded in the proper order and executed fully by all the appropriate or necessary parties. As has been stated, no party to this proceeding has been shown to have been harmed by taking an interest in any portion of the four parcels for value and without notice of all the significant facts concerning the 1960 sublease. Upon all the subsidiary findings, any result other than that reached by the trial judge would be grossly inequitable. Susse Chalet is to pay costs of appeal.

*Judgment affirmed.*

APPENDIX.

Chronology of Dealings after August 12, 1960, with the Four-parcel Lease and the Lease or Sublease of August 9, 1960.

(a) *September 25, 1961.* 333 assigned to Lucier the lease of August 9, 1960 (not recorded until November 5, 1962). Lucier signed and acknowledged this assignment as president of 333.

(b) *October 31, 1961.* Lucier assigned to one Teece, for the benefit of creditors, Lucier's interest in the four-parcel lease.

(c) *November 1, 1961.* Lucier, 333, and another of Lucier's corporations assigned to Teece all their assets for the benefit of creditors.

(d) *November 8, 1961.* A receiver for Lucier under Chapter XI of the Bankruptcy Act was appointed by the United States District Court.

(e) *November 20, 1961.* The receiver at public auction sold to one Kent or his nominee all Lucier's interest in the four-parcel lease. Kent designated Kenmore Company, a partnership, as his nominee.

(f)  *December 14, 1961.* Lucier was adjudged a bankrupt and the receiver under Chapter XI, see par. (d) above, was appointed Lucier's trustee in bankruptcy.

(g)  *January 5, 1962.* Teece assigned the four-parcel lease to Kenmore Development Co., Inc., a Massachusetts corporation.

(h)  *February 13, 1962.* Kenmore Development Co., Inc., executed a notice of lease to the Clover Leaf Corporation (a Connecticut corporation) of premises described as a Howard Johnson Motor Lodge (the rear part of the four parcels) and a Howard Johnson Restaurant on the front part of the four parcels.

(i)  *May 15, 1962.* Lucier assigned to the Kenmore Company his interest in 333's lease to Howard Johnson of August 9, 1960.

(j)  *July 27, 1962.* Lucier's trustee in bankruptcy transferred to the Kenmore Company Lucier's interest in the four-parcel lease, including the interest, see par. (b) above, which Lucier had purported to transfer to Teece on October 31, 1961.

(k)  *April 30, 1963.* Lucier, Kenmore Company, 333, and Kenmore Development Co., Inc., all executed an instrument purporting to cancel a sublease dated August 9, 1960, from Lucier to 333.

(l)  *June 1, 1963.* The copartners of the Kenmore Company assigned to themselves as general copartners of Mt. Tom Motor Lodge Associates,

(1)  the four-parcel lease of August 12, 1960;

(2)  the sublease of February 13, 1962, see par. (h), *supra*, to the Clover Leaf Corporation;

(3)  the sublease of August 9, 1960, from 333 to Howard Johnson.

(m)  *December 15, 1976.* The lease between Mt. Tom Motor Lodge Associates and the Clover Leaf Corporation was terminated by a written instrument.

(n)  *February 16, 1977.* Mt. Tom Motor Lodge Associates assigned to Susse Chalet (then operating under a slightly different name) all its rights to

(1)  the four-parcel lease,

(2)  the restaurant lease of August 9, 1960, and another lease not shown to be pertinent.

By an instrument of the same date (February 16, 1977), Mt. Tom Motor Lodge Associates transferred to Susse Chalet all its interest in the four-parcel premises, reciting that the grantor did not own title to the four-parcel premises, and that the transfer was *subject to* the four-parcel lease of August 12, 1960 (which Susse Chalet was to assume and agree to pay), and to the lease of August 9, 1960, between 333 and Howard Johnson.

(o)  For about seventeen years, from 1960 until February, 1977, Howard Johnson paid to the various assignees of the four-parcel lease the rent due under the lease of August 9, 1960.

(p)  *August 3, 1977.* The attorney for Mt. Tom Motor Lodge Associates gave notice to Howard Johnson that the restaurant premises had been sold to Susse Chalet. Howard Johnson thereupon tendered to Susse Chalet the payments of rent due to the

lessor under the lease of April 9, 1960. Susse Chalet has never accepted these tenders. No new lease or sublease of the restaurant parcel has been made by Susse Chalet and Howard Johnson, and Susse Chalet has refused to execute an instrument drafted by Howard Johnson, the effect of which would be to cause Susse Chalet to assume and agree to perform the sublease of August 9, 1960, as lessor.

(q) *November 29, 1977.* Susse Chalet's attorney sent to Howard Johnson a written notice (received by Howard Johnson on December 1, 1977) to vacate the restaurant premises at the end of the rental period next succeeding receipt of the notice. Howard Johnson "has remained in possession of the restaurant premises, which it has occupied by virtue of . . . [the 1960 sublease] continuously from 1960 to . . . the commencement of this action."