ARTHUR T. MURPHY & another vs. BRENDON J. DONOVAN & others.

Barnstable.    March 8, 1976. — August 11, 1976.

Present: KEVILLE, GRANT, & ARMSTRONG, JJ.

*Practice, Civil, Parties. Subdivision Control. Easement. Way,* Private: creation; Way open to public. *Deed,* Construction.

Purchasers of property shown on a subdivision plan approved and recorded by the planning board of a town acquired no interest in a parcel of land shown as part of a way on the plan by virtue of any right accruing to them as members of the public. [526-528]

Reference in a deed to a subdivision plan showing a portion of the property conveyed as part of a way did not operate to create an easement by implication over that portion for the benefit of the property retained by the grantors, where it appeared from the subsequent conduct of the parties that no such easement was intended. [528-529]

A conveyance violating a provision of the Subdivision Control Law did not invalidate the grantors' intent to convey a parcel of land shown as part of a way on a subdivision plan free and clear of any easement for the benefit of the grantors' remaining land. [529]

BILL IN EQUITY filed in the Superior Court on December 3, 1964.

Pursuant to an order of the Supreme Judicial Court, the case was heard by *Hudson, J.,* on a master's report.

A final decree was entered by *Nelson, J.*

*Cortland A. Mathers* for Arthur T. Murphy & another.

*Marcus E. Cohn* for Jerome Horwitz.

*Edward M. Mahlowitz* for Miriam Horwitz.

*Laurence F. Simcock* for Brendon J. Donovan & another, submitted a brief.

KEVILLE, J.    In 1951 Peter and Mary Dalton recorded the subdivision plan of a tract of land in Chatham which is reproduced on the following page as figure 1.[1] In 1954

---

[1] Cockle Cove Road is a town way which was in existence in 1951.

FIGURE 2

the plaintiffs, Arthur T. and Eileen M. Murphy, purchased from the Daltons lots 20, 22, and an "unnumbered parcel" (the locus) which is shown as the shaded area on figure 2. In 1964 the defendants Brendon Donovan and Miriam Horwitz acquired lots 16-19, 21, and 23 from the heirs of Peter Dalton. Late in the same year, as the result of a dispute concerning the boundary between lots 18 and 20, Mr. Murphy brought a bill in equity to enjoin Mr. Donovan from trespassing on the Murphy property.[2] Mr. Donovan (later joined by his wife) sought by counterclaim (see Rule 32 of the Superior Court [1954]) to establish an easement to use the locus as a part of Lantern Lane.

Nothing is to be gained by a recital in depth of the more than a decade of litigation which has followed. It is sufficient to state that the case comes to this court on the Murphys' appeal (taken November 9, 1973) from a final decree entered on the Donovans' counterclaims;[3] the por-

---

[2] Following the appeal of the case to the Supreme Judicial Court and as a result of the order entered by the Supreme Judicial Court (see n. 4), Mrs. Murphy was added as a party plaintiff and Mrs. Donovan, the town of Chatham, and Jerome and Miriam Horwitz were added as parties defendant.

[3] By their failure to argue, we deem the Murphys to have waived their appeals from various interlocutory decrees, including that which

tion of that decree which the Murphys attack declared that their interest in the locus is "subject to the use of Lantern Lane by all abutters and is hereby made a part of said Lantern Lane, Chatham, Massachusetts, as shown on" the 1951 subdivision plan.

We have before us a confirmed master's report, a report of the evidence taken at a hearing in 1968 before a judge of the Superior Court,[4] the judge's findings on that evidence and the transcript of a hearing in 1973 before a second judge at which no evidence was taken. The second judge entered the final decree and adopted the findings of the first judge as his report of the material facts. In deciding this case it is our duty to examine all of the evidence and to exercise our own judgment. We treat the master's subsidiary findings of fact (which are neither inconsistent, contradictory, nor plainly wrong) as binding (*Selectmen of Hatfield* v. *Garvey,* 362 Mass. 821, 825 [1973]) and accept as true the findings of the judge based on oral testimony unless they are shown to be plainly wrong. *Massachusetts Mut. Life Ins. Co.* v. *Massachusetts Life Ins. Co.* 356 Mass. 287, 288 (1969). *Gorman* v. *Stein,* 1 Mass. App. Ct. 244, 246 (1973). We may find facts in addition to those found by the master and the judge. *Uliasz* v. *Gillette,* 357 Mass. 96, 97-98 (1970).

The Daltons purchased the five and one-half acre tract of land shown on the 1951 subdivision plan in 1947. In 1948 they conveyed that portion of the tract which appears on that plan as lots 7-8, 10-11, and 13-14 to one Elizabeth Montague by a deed which referred to an earlier subdivision plan of the tract recorded in 1948 by the Daltons.

---

discharged their lis pendens as to lot 16. Similarly we deem waived the Murphys' bill of exceptions, and the appeals taken by the Donovans from various interlocutory decrees. *Lolos* v. *Berlin,* 338 Mass. 10, 13-14 (1958). *Hathaway* v. *Hathaway,* 3 Mass. App. Ct. 727 (1975).

[4] After the master's report was filed and confirmed and a decree entered thereon, the case was appealed to the Supreme Judicial Court. That court reversed the decree confirming the master's report and remanded the case with instructions, among others, to find further facts concerning the issues raised with respect to the locus. The hearing mentioned above resulted. The master's report has been reconfirmed.

In the same year Montague reconveyed this land to the Daltons and William and Margaret Herlihy as joint tenants. In 1950 the Daltons conveyed, also by a deed referring to the 1948 subdivision plan, land which appears on the 1951 subdivision plan as lots 1 and 4 to one Charles Kolb and his wife. The subdivision plan recorded by the Daltons in 1951 was approved by the Chatham planning board in April of that year. The rules and regulations of the planning board at that time required that dead-end streets (e.g., Lantern Lane) "must have a rotary turning area at the dead end having a property line radius of not less than 40 feet." It does not appear from the record why the planning board approved the Daltons' subdivision plan in spite of its failure to comply with this regulation.[5]

By 1954 houses had been built on one of the Kolb lots and on at least some of the lots which the Daltons and Herlihys owned as joint tenants. Of those lots to which the Daltons retained sole title in 1954 (lots 2, 5, and 16-23) all but lot 2, on which the Daltons' house was located, were undeveloped. Lantern Lane east of lots 16 and 17 was apparently no more than a primitive dirt road. The locus was covered with underbrush and approximately six large trees grew on it.

In January or early February of 1954 Mr. Murphy, who with his wife owned and lived on property which bordered on the northerly boundary of lot 22, discussed with Mr. and Mrs. Dalton the possibility of purchasing a portion of the Daltons' property. Murphy had seen the 1951 subdivision plan, and asked Dalton what the locus was. Dalton answered that it was "just a jog"; he did not refer to the locus as a turnaround for use in connection with Lantern Lane. Murphy offered to purchase lots 20, 22, and the locus, stating that he wanted to buy a parcel that was as nearly rectangular as possible and that he did

---

[5] At the time of the 1968 hearing the regulation read, "Dead-end streets shall be provided at the closed end with a turnaround having an outside street line diameter of at least eighty (80) feet, but in the instance of unusual topography or other local conditions the Board may approve a suitable 'T' or 'L' turnaround."

not want any "jogs" in it. Dalton replied that he owned
enough houses between Cockle Cove Road and lots 16
and 17, that he had no further interest in developing lots
16-23, and therefore would be glad to sell the locus as
well as lots 20 and 22. Murphy and Dalton later walked
over the property Murphy was to purchase. When they
came to the locus, whose northwestern and southwestern
corners were marked by cement bounds which Murphy
saw, Dalton said, "Mr. Murphy, this is part of your land."

On February 25, 1954, the Daltons gave the plaintiffs
a deed which conveyed to them "Lots 20 and 22 and an
unnumbered parcel at the Southeasterly corner of Lot 22
as shown on" the 1951 subdivision plan.[6] The deed gave
the Murphys "a right of way for all purposes to and from
Cockle Cove Road over Lantern Lane as shown on said
Plan" but was silent as to any easement reserved by the
Daltons to pass over the locus. Mr. Dalton drew the deed.

Immediately after the Murphys purchased lots 20, 22,
and the locus, Mr. Murphy placed a fence along the south-
ern boundary of the locus. This fence has since been re-
placed by another fence which runs along the southern
boundaries of lots 20 and 22 as well. Murphy also cleared
the underbrush off the locus and has periodically cut the
grass and weeds with his lawnmower. The trees, however,
remain and render the locus impassable to motor vehicles.

---

[6] The deed's description of the parcel conveyed was as follows:
"A certain parcel of land situated on the Northerly side of Lantern
Lane in said Chatham, bounded and described as follows: —

| | |
|---|---|
| SOUTHERLY | by said Lantern Lane, one hundred eighty-nine (189) feet, more or less; |
| WESTERLY | by Lot No. 18 on a Plan hereinafter mentioned, one hundred six (106) feet, more or less; |
| NORTHERLY | by land of Arthur T. Murphy et ux, one hundred eighty and 59/100 (180.59) feet, more or less, and |
| EASTERLY | by land of Melinda F. Ellis, seventy-six (76) feet, more or less. |

Being shown as Lots 20 and 22 and an unnumbered parcel at the
Southeasterly corner of Lot 22 as shown on "Plan of Land in Chatham,
Mass. for Peter H. and Mary A. Dalton, Scale 1 in. = 30 feet, Herbert
Richardson, Surveyor — No. 2636.
Together with a right of way for all purposes to and from Cockle
Cove Road over Lantern Lane as shown on said Plan."

On May 28, 1964, the heirs of Peter Dalton conveyed lots 16-19, 21, and 23 as shown on the 1951 subdivision plan to Donovan and the defendant Miriam Horwitz as tenants in common. The deed carried with it "an appurtenant right of way over Lantern Lane from Cockle Cove Road, to be used for all purposes for which public ways are used in the Town of Chatham, including the right to install and maintain all public utility services within the confines of said Lantern Lane." Donovan and Horwitz were partners in a business enterprise which apparently included the construction and sale of houses. After the purchase Donovan and Horwitz began the construction of a house on lot 18.

In 1965 Donovan and Horwitz recorded a subdivision plan which revised the 1951 subdivision plan with respect to lots 17, 19, 21 and 23. There is no evidence what action, if any, the Chatham planning board took on this plan.[7] The plan shifted the eastern boundary of lot 17, as shown on the 1951 subdivision plan, approximately one foot to the west; shifted the eastern boundary of lot 19 approximately ten feet to the east; and combined the remainder of lot 21 with lot 23 to form one lot. The resulting lots were labeled 17A, 19A, and 23A, respectively.

It appears from statements made by the attorneys for the Murphys, Donovans, and Horwitzes at the 1973 hearing before the judge who entered the final decree and from documents appended to motions made by various of the parties that, following the 1968 hearing, the partnership of Mr. Donovan and Mrs. Horwitz was dissolved. As a result, the Horwitzes acquired sole title to lot 16 on the 1951 subdivision plan and lots 17A and 19A on the 1965 subdivision plan. They thereafter conveyed lot 16 to Richard and Nancy Renehan and lots 17A and 19A to Paul and Catherine Nagy.

On the record before us it is uncertain exactly what interest the Donovans now own in the property purchased

---

[7] Subject to certain limitations, changes in the number, size and shape of lots shown on a subdivision plan may be made without approval of the planning board. G. L. c. 41, § 810. See note 8, *infra*.

by Donovan and Mrs. Horwitz in 1965. It does appear that the Donovans (or one of them) have title to lot 23A as shown on the 1965 subdivision plan. In addition the Donovans (or one of them) may have title to lot 18.

1. The judge who entered the final decree refused to add the Nagys and the Renehans as parties. The Murphys and the Donovans are, therefore, the only owners of property shown on the 1951 subdivision plan who are parties to this suit. Although the absence of the other owners of the property shown on the 1951 subdivision plan prevents the adjudication in this suit of their rights (if any) in the locus, it does not prevent the adjudication as between the Murphys and the Donovans of the latters' rights in the locus. *Foley* v. *McGonigle*, 3 Mass. App. Ct. 746 (1975).

2. The approval by the planning board of the 1951 subdivision plan showing the locus as part of Lantern Lane and the subsequent recording of that plan vested no interest in Lantern Lane in the public. *Uliasz* v. *Gillette*, 357 Mass. at 103-104. *Dolan* v. *Board of Appeals of Chatham*, 359 Mass. 699, 700-702 (1971). Therefore, if the Donovans have any rights in the locus, it must be by virtue of an easement appurtenant to their land in the subdivision rather than by virtue of some right accruing to them as members of the general public.

If an easement appurtenant to the Donovan property to use the locus came into existence, it must have arisen when the common ownership of the Donovan property and the locus was first severed by the 1954 deed of the Daltons to the Murphys. *Krinsky* v. *Hoffman*, 326 Mass. 683, 687 (1951). The deed to the Murphys contained no language expressly reserving an easement to pass over the locus for the benefit of the Daltons' remaining property. Therefore, that deed created no such easement unless the references in the deed to the 1951 subdivision plan, which showed the locus as part of Lantern Lane, operated to reserve such an easement by implication. *Mount Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100,

103-104 (1933). *Goldstein* v. *Beal,* 317 Mass. 750, 754-755 (1945).

" '[T]he purpose and effect of a reference to a plan in a deed, is a question of the intention of the parties.' " *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.* 254 Mass. 350, 354 (1926). *Thompson* v. *Lorden,* 358 Mass. 69, 73 (1970). The intention of the parties is determined by considering the terms of the deed together with the entire situation at the time it was given, including the physical condition of the premises and the knowledge which the parties had or with which they are chargeable. *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp., supra,* at 354-355. *Mount Holyoke Realty Corp.* v. *Holyoke Realty Corp., supra,* at 104. *Krinsky* v. *Hoffman,* 326 Mass. at 687-688. *Hurley* v. *Guzzi,* 328 Mass. 293, 296 (1952). *Rahilly* v. *Addison,* 350 Mass. 660, 662-663 (1966). The practical construction given the deed by the parties as shown by their subsequent conduct may also be considered. *Bacon* v. *Onset Bay Grove Assn.* 241 Mass. 417, 423 (1922).

The trial judge found that, when the Daltons conveyed the locus to the Murphys, the parties did not intend that an easement over the locus be reserved for the benefit of the Daltons' remaining land. We are of the opinion that that finding was not plainly wrong. The judge could conclude from the deed's silence with respect to an easement (*Dale* v. *Bedal,* 305 Mass. 102, 103 [1940]; *Krinsky* v. *Hoffman,* 326 Mass. at 688) and from the practical construction given the deed as shown by Murphy's placement of a fence along the southern boundary of the locus, apparently without objection from the Daltons, that the parties did not intend that an easement be reserved for the benefit of the property retained by the Daltons to pass over the locus. It is true, in determining whether an easement has been reserved, that the factor of necessity is important (*Krinsky* v. *Hoffman,* 326 Mass. at 688), and that the Daltons' failure to reserve an easement to pass over the locus might well justify the refusal of an application

for a permit to build on any of the lots retained by the Daltons unless a new subdivision plan were filed and approved by the planning board (see the second paragraph of G. L. c. 41, § 81Y). But Dalton appeared to recognize and accept this possibility. Admitted into evidence without objection was his statement that he had no interest in developing any of those lots. *Orpin* v. *Morrison,* 230 Mass. 529, 532-533 (1918). In any event, there is nothing to indicate that a new plan could not have been filed which would have permitted construction on at least some of the lots.

3. We next consider whether, as the trial judge apparently believed, the Subdivision Control Law (G. L. c. 41, §§ 81K-81GG) invalidated the Daltons' intent to convey the locus to the Murphys without reserving for the benefit of their remaining property an easement to pass over the locus. General Laws c. 41, § 810, prohibits changes in "the location and width of ways" shown on an approved subdivision plan unless the plan is amended as provided in § 81W.[8] We assume, without deciding, that the Daltons' conveyance of the locus without reserving an easement to pass over the locus for the benefit of the property they retained constituted a change in the width and location of Lantern Lane which violated § 810. Nevertheless, it does not follow that the Subdivision Control Law nullified the Daltons' attempt to convey the locus to the Murphys free and clear of any easement over the locus for the benefit of their remaining land.

The sanctions for the enforcement of the Subdivision Control Law are all contained in G. L. c. 41, § 81Y (inserted by St. 1953, c. 674, § 7). See 1953 House Doc. No.

---

[8] The pertinent portion of § 810 reads, "After the approval of a plan the location and width of ways shown thereon shall not be changed unless the plan is amended accordingly as provided in section eighty-one W; but the number, shape and size of the lots shown on a plan so approved may, from time to time, be changed without action by the board, provided every lot so changed still has frontage on a public way or way shown on a plan approved in accordance with the subdivision control law of at least such distance, if any, as is then required by ordinance or by law of said city or town for erection of a building on such lot."

2249, p. 59. Section 81Y places a one-year statute of limitations upon the various proceedings in equity it authorizes for the enforcement of the Subdivision Control Law. That year, whether measured from the date of the Daltons' deed to the Murphys or from the date of the deed of Peter Dalton's heirs to Donovan and Horwitz, has expired. Although, as we have suggested, other sanctions contained in § 81Y may render impossible the obtaining of permits to build on any of the lots retained by the Daltons in 1954 without the filing and approval of a new subdivision plan, none of the sanctions in any way affects the validity of the Daltons' deed to the Murphys. One of the purposes of the 1953 revision of the Subdivision Control Law was to lessen the chance that defects in title would arise as a result of conveyances which did not comply with the Subdivision Control Law. 1953 House Doc. No. 2249, pp. 10, 59. 1954 Ann. Survey of Mass. Law, p. 25.

4. We conclude that the Daltons conveyed the locus to the Murphys free and clear of any easement over the locus for the benefit of their remaining property. Therefore the heirs of Peter Dalton by their deed of 1964 could convey no right of way over the locus to Donovan and Horwitz (*Darman* v. *Dunderdale,* 362 Mass. 633, 639-640 [1972]), and no easement to use the locus is appurtenant to the property now owned by the Donovans (or either of them).

That portion of the final decree which declares that the plaintiffs' interest in the locus "is made subject to the use of Lantern Lane by all abutters and is hereby made a part of said Lantern Lane" is to be struck. The case is remanded to the Superior Court for the entry of a judgment to the effect that the locus is not subject to an easement in favor of any of the land purchased by Donovan and Horwitz in 1964 which may now be owned by the Donovans or either of them.

*So ordered.*