MELROSE HOUSING AUTHORITY *vs.* NEW HAMPSHIRE
INSURANCE COMPANY.[1]

Middlesex.  December 8, 1987. — March 28, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Limitations, Statute of. Contract,* Construction contract, Performance and
breach.

On appeal by a contractor's surety from a judgment in favor of a municipal
housing authority on the authority's claim for breach of a contract for
construction of a public housing project, this court held that the claim
was barred by the six-year limitation period for contract actions set forth
in G. L. c. 260, § 2, which had expired before the action was commenced,
where, despite the findings of the master that the deficiencies in construc-
tion were inherently unknowable, it appeared that the authority had the
means at its disposal to learn of the deficiencies, which were widespread
and debilitating, in view of provisions in the contract providing that the
authority or its representative could inspect the work as it progressed,
that no work could be covered up without the authority's consent, and
that any work so covered could be exposed at the contractor's expense
on the owner's request. [31-35]

CIVIL ACTION commenced in the Superior Court Department
on June 9, 1981.

The case was heard by *Thomas R. Morse, Jr.,* J., on a
master's report.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Terrance J. Hamilton* (*Stephen M. Perry* with him) for the
defendant.

*Jerry E. Benezra* (*Gerald J. Cook & Robert B. Smith* with
him) for the plaintiff.

---

[1] The Massachusetts State Association of Architects filed a motion for
leave to file a brief amicus curiae. We allow the motion and have considered
their brief.

*David S. Rosenthal,* Special Assistant Attorney General, & *James A. Kobe,* for Massachusetts Executive Office of Communities and Development, amicus curiae, submitted a brief.

*Carl M. Sapers, Christopher L. Noble & Anne E. Taubes Warner,* for Massachusetts State Association of Architects, amicus curiae, submitted a brief.

*M. Frederick Pritzker, Elizabeth A. Ritvo, Paul R. Devin, & R. Alan Fryer,* for Cosmopolitan Construction Co., Inc., & another, amici curiae, submitted a brief.

LYNCH, J. On June 9, 1981, the Melrose Housing Authority (Melrose) sued Varrasso Brothers, Inc. (Varrasso),[2] and its surety, New Hampshire Insurance Company (New Hampshire), to recover the costs of removing and reconstructing the face brick wall on one of Melrose's buildings after the wall began buckling and cracking approximately seven years after construction.

Melrose alleged in its complaint that, in 1969, it entered into a construction contract with Varrasso; that the building was not constructed in accordance with the contract or in a workmanlike manner; and that Melrose was obliged to hire independent professional consultants to investigate and repair the problem. The complaint sought damages on theories of, inter alia, negligence, breach of contract and breach of warranties. New Hampshire filed an answer denying the material allegations of the complaint and asserting affirmative defenses including the statute of limitations.

Summary judgment was granted in favor of New Hampshire on all counts except the claim for breach of contract. Thereafter, the case was tried before a master, who concluded that New Hampshire was responsible under its bond to Melrose in the amount of $1,007,500.36. The master's report was confirmed by the judge over New Hampshire's objection and judgment was entered against New Hampshire in the sum of $1,007,500.36, plus interest and costs. New Hampshire appealed.

---

[2] Varrasso Brothers, Inc., is not a party to this litigation.

The Appeals Court reversed the judgment below, ruling that the statute of limitations barred Melrose's claim. *Melrose Hous. Auth.* v. *New Hampshire Ins. Co.,* 24 Mass. App. Ct. 207 (1987). We granted the plaintiff's application for further appellate review and agree that the Superior Court judgment should be reversed.

From the master's report and the contract documents, the following facts appear. The building at issue — the Julian Steele House — was designed and built with a "cavity wall," meaning there was an interior structural wall and an exterior nonstructural facade, with an air space in between. The interior wall was made of concrete, consisting of concrete columns (vertical members), concrete spandrel beams (horizontal members), and concrete blocks between these members. The contract documents originally specified that the building's exterior wall was to be similarly composed of concrete face block, rather than the brick that was ultimately used.

The plans and specifications provided for the exterior wall of concrete blocks to be attached to the interior concrete wall in the following manner. Wedge inserts were precast into each of the horizontal concrete spandrel beams, thereby becoming part of the load-bearing interior wall. The first course of concrete blocks for the exterior wall would then be laid, starting at the foundation and working up to the level of the first spandrel beam of the interior wall. Pressure-relieving angle irons would then be bolted to the inserts in the interior spandrel beams by means of V-bolts (bolts with V-shaped heads) that were fitted into each wedge. The next course of blocks for the exterior wall was then to be built on top of the angle irons until the level of the next spandrel beam was reached, after which the process would be repeated until the roof cant was reached.

The contract between Varrasso and Melrose was executed on April 23, 1969, and work began shortly thereafter. In July, 1969, the architect, apparently at Melrose's request, issued "Change Order No. 1," providing for an exterior wall composed of face brick instead of face block. The change order did not alter the manner in which wedges, V-bolts, and angle irons were to be used.

Varrasso was also responsible for installing the flashing as well as the nuts and bolts that held the angle irons in place. Varrasso's workers installed angles, nuts and bolts, and laid the masonry wall. The metal hardware was then covered by flashing and the next course of bricks on the exterior wall. Varrasso's contract provided that Melrose and the architect had a right to inspect the work as it progressed and stipulated that no work could be covered up without the approval or consent of either the architect or Melrose. Any work that Varrasso covered up without such approval or consent could be uncovered at Varrasso's expense at the request of either the architect or Melrose.

Pursuant to its contract with Melrose, the architect was required to supervise the construction and endeavor to protect Melrose from any defects or deficiencies in the work. A clerk of the works also represented Melrose on the project. His job was to be on the site during the construction work, to conduct such inspections as were necessary, and to ensure that there were no departures from the plans and specifications. In April, 1971, the architect and Melrose conducted a final inspection of the building and the architect issued a certificate of substantial completion.

Some five or six years after the building was completed, however, Melrose began to experience problems with water leaking into the building; in 1977 it discovered hairline cracks in the brick wall; and by 1978 the cracks had widened and the wall was cracking and buckling. Melrose retained an architectural firm to investigate these problems, which in turn retained a masonry consultant, R.J. Kenney & Associates. Kenney conducted an investigation of the building, performed some tests, and issued a series of reports to Melrose. Kenney tested both the brick and the mortar used on the building, and found that they met all project and industry specifications. Russell J. Kenney testified at trial that the cracking was caused by Varrasso's poor workmanship. Kenney claimed that Varrasso's work was flawed in two principal respects.

First, Kenney testified that when he inspected nine areas of the building in 1978, the bolts that secured the angle irons

were only finger-tight. In one instance the nut that was supposed to be on the bolt was found on the angle iron. Second, Kenney testified that the mortar and brick were not well-bonded when he inspected the masonry in 1978. He claimed that the masons must have allowed the mortar to dry out while working with it.

The master found that Varrasso had failed to secure the angle irons properly when the building was constructed. He found that some angles were missing. He concluded that the facade's cracking and buckling was due to the loose and missing angle irons, and the poor workmanship in the masonry sections of the building. The master also found that in several places flashing was missing or not in its proper place.

The master ruled that the applicable statute of limitations was six years, but that the problems with the angle irons and the flashing were inherently unknowable until 1978, tolling the statute. He did not find that the poor bonding was inherently unknowable. He found that all the defects would have been known to a competent supervisor of Varrasso had there been one on the job site, but that the defects could not have been known to a supervisor of Melrose on the job site.[3]

The primary question on appeal is whether the construction defects were inherently unknowable until they were discovered as a result of the cracking and buckling of the facade in 1978.[4]

---

[3] The clerk of the works was deceased, and his weekly reports were not available to the master.

[4] The plaintiff argues that we may not answer this question for ourselves on appeal because "inherent unknowability" is a finding of fact for the trier of fact alone to make. We disagree. Inherent unknowability is not a fact, but rather a conclusion to be drawn from the facts. Hence, we agree with the Appeals Court that, while "the question of whether reasonable diligence has been exercised is factually based, . . . the actual determination [of the question] is a sufficiently mixed question of law and fact to permit an appellate court to resolve the issue at least where the action below was tried [to a master]." *Melrose Hous. Auth.* v. *New Hampshire Ins. Co.,* 24 Mass. App. Ct. 207, 215 (1987), quoting *Cook* v. *Avien, Inc.,* 573 F.2d 685, 697 (1st Cir. 1978). In actions tried to a master and without a jury, this court is free to "draw its own inferences from the master's subsidiary findings." Mass. R. Civ. P. 53 (h) (1), as appearing in 386 Mass. 1236, 1242 (1982). It is the job of the appellate court to review for itself conclusions of law. *Pollock* v. *Marshall,* 391 Mass. 543, 555 (1984). In a case involving a master's report, while we are bound by the master's findings if not clearly

It is argued that, if the defects were inherently unknowable, the statute of limitations would be tolled until they were discovered or should have been discovered in the exercise of due diligence, whichever first occurs. See, e.g., *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.,* 396 Mass. 818, 824 (1986); *White v. Peabody Constr. Co.,* 386 Mass. 121, 129 (1982), and cases cited. If they were not inherently unknowable, the general rule that a contract claim accrues at the time of the breach would apply. *Campanella & Cardi Constr. Co.* v. *Commonwealth,* 351 Mass. 184, 185 (1966). We conclude that the defects were not inherently unknowable at the time of construction and, hence, the statute of limitations had run before suit was brought. See G. L. c. 260, § 2 (1986 ed.).[5]

---

erroneous, mutually inconsistent, unwarranted by the evidence or legally wrong, we will not ignore the evidence in the record. Rather, "it is our duty to examine all of the evidence and to exercise our own judgment." *Murphy* v. *Donovan,* 4 Mass. App. Ct. 519, 522 (1976). We may find facts in addition to those properly found by the master and the judge so long as not inconsistent therewith. Mass. R. Civ. P. 53 (h) (1). *Murphy* v. *Donovan, supra,* citing *Uliasz* v. *Gillette,* 357 Mass. 96, 97-98 (1970). The above principles indicate that, at least in the circumstances of this case, the question of inherent unknowability is properly for this court to answer.

[5] The parties do not raise the issue whether the discovery rule applies in this context. We announced the concept of a "discovery rule" for inherently unknowable claims in *Hendrickson* v. *Sears,* 365 Mass. 83 (1974), where, analogizing to the discovery rule for cases of fraudulent concealment, we held that a cause of action for an attorney's negligent certification of title to real estate accrues when the misrepresentation is discovered or reasonably should have been discovered, whichever first occurs. *Id.* at 83-84. The holding was an exception to the general rule that a cause of action for breach of contract accrues at the time of the breach. *Campanella & Cardi Constr. Co.* v. *Commonwealth,* 351 Mass. 184, 185 (1966).

The rationale of *Hendrickson* v. *Sears, supra,* has limited application to the facts and circumstances of this case. It is common practice for the owner or architect of a commercial construction project to employ a clerk of the works to inspect and ensure the competent progress of the construction. See AIA Document A201, "General Conditions of the Contract for Construction" at par. 2.2.16, contained in 2 Am. Inst. of Architects, Building Construction Legal Citator (1982 ed.) (owner and architect may agree to hire full-time on-site representative). In the case at hand, Melrose employed such a person. Thus, the problem of superior knowledge is not presented here. Further, much of the evidence as to breach has been lost; indeed, the clerk of the works has since died, and his reports are not available. This would not be unusual in the case of defects discovered in commercial

Manifestly, Melrose had the means at its disposal to learn of the defects. The contract gave Melrose the right to inspect the construction as it progressed. If work was covered up without Melrose's inspection and approval, Melrose could order it uncovered — even if this meant ripping out a completed wall — in order to exercise its right of inspection.

buildings long after construction. Thus, the interest in precluding stale claims looms large. Additionally, the statute of limitations does not deprive the building owner of the value of its purchase where it has at its disposal the full panoply of rights referred to herein (*supra* at 30) for inspecting the work and ascertaining the existence of any defects. The statute of limitations merely permits the contractor — or its insurer — to rest assured that, after a period of more than six years has passed, a claim for breach of contract will not be pressed against it. Also absent in these circumstances is a fiduciary relationship between the contractor and owner or an express promise or warranty understood to extend beyond the limitation period. Where, as here, the parties stand in relatively equal positions of knowledge in a commercial transaction involving major building construction, it is doubtful if it is appropriate to apply the discovery rule.

This has been the conclusion in some, but not all, of our sister States. See *Beckenstein* v. *Potter & Carrier, Inc.,* 191 Conn. 150, 156 (1983); *Roberts* v. *Richards & Sons,* 113 N.H. 154, 155-157 (1983); *State* v. *Holland Plastics Co.,* 111 Wisc. 2d 497, 506 (1983); *South Burlington School Dist.* v. *Goodrich,* 135 Vt. 601, 604-605 (1977). Cf. *Wellston Co.* v. *Sam N. Hodges, Jr. & Co.,* 114 Ga. App. 424, 427 (1966) (refusing to extend discovery rule to plaintiff's tort claim against contractor); *M.T. Reed Constr. Co.* v. *Jackson Plating Co.,* 222 So. 2d 838 (Miss. 1969) (same); *Omaha Paper Stock Co.* v. *Martin K. Eby Constr. Co.,* 193 Neb. 848, 851 (1975) (same); *Niagara Falls* v. *Rudolph,* 97 A.D. 2d 971 (N.Y. 1983) (same). But see *Hipco* v. *Varco-Pruden,* 687 P.2d 540, 541 (Colo. App. 1984), citing *Criswell* v. *M.J. Brock & Sons,* 681 P.2d 495 (Colo. 1984); *Kelly* v. *School Bd. of Seminole County,* 435 So. 2d 804 (Fla. 1983); *Society of Mount Carmel* v. *Fox,* 31 Ill. App. 3d 1060 (1975); *Greenbrier Condominium Ass'n* v. *Keller Inv. Inc.,* 409 N.W. 2d 519, 524 (Minn. App. 1987); *Torcon, Inc.* v. *Alexian Bros. Hosp.,* 205 N.J. Super. 428, 431 (1985); *Asheville School* v. *D.V. Ward Constr., Inc.,* 78 N.C. App. 594, 596 (1985).

In Massachusetts, the discovery rule has been applied in a variety of situations, but never in the context presented by this case. See, e.g., *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.,* 396 Mass. 818, 824 (1986) (discovery rule applies to express warranty claim but not to claim of implied warranty or negligent design); *Franklin* v. *Albert,* 381 Mass. 611 (1980) (medical malpractice); *Friedman* v. *Jablonski,* 371 Mass. 482 (1976) (deceit in sale of real estate); *Hendrickson* v. *Sears, supra; Graveline* v. *BayBank Valley Trust Co.,* 19 Mass. App. Ct. 253, 254-256 (1985) (misrepresentation in sale of house).

The right of inspection was not an empty contract clause. Melrose employed a full-time clerk of the works and an architect, either of whom is charged with the expertise to inspect the project and discover the defects. If the defects are indeed as widespread and debilitating as Melrose alleges, it cannot seriously be argued that they were inherently unknowable to experts, one permanently and one periodically, on the job site. See *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.,* 396 Mass. 818, 825 n.9 (1986) (discovery rule offered the plaintiff no aid where the breach was "a fact that the plaintiff could have ascertained at the time of construction . . . by inquiring as to [the workers' and subcontractors'] qualifications"); *Friedman* v. *Jablonski,* 371 Mass. 482, 487 (1976) (real estate seller's misrepresentation regarding right of way could have been discovered through reasonably diligent title search); *Graveline* v. *BayBank Valley Trust Co.,* 19 Mass. App. Ct. 253, 254 (1985) (alleged misreprésentation as to age of roof could have been discovered through reasonably diligent inspection of premises); *Gore* v. *Daniel O'Connell's Sons, Inc.,* 17 Mass. App. Ct. 645, 647-649 (1984) (plaintiff could not be said to be in state of "blameless ignorance" of his injury). See also *Cook v. Avien, Inc.,* 573 F.2d 685 (1st Cir. 1978) (in action alleging misrepresentation in sale of securities, plaintiffs could have discovered misrepresentations through reasonably diligent perusal of outside sources). Furthermore, the master specifically found that, had Varrasso properly supervised the work, the defects would have been discovered. We see no reason why a supervisor employed by Melrose should not bear the same burden.

The master's finding that Melrose's supervisors could not have discovered the defects is wrong as a matter of law in light of the contract documents, and inconsistent with his finding regarding Varrasso's supervisor.[6]

___

[6] Inconsistent findings must be rejected under Mass. R. Civ. P. 53 (h) (1), as appearing in 386 Mass. 1236, 1242 (1982): "In an action to be tried without a jury, the court shall accept the master's subsidiary findings of fact unless they are clearly erroneous, mutually inconsistent, unwarranted by the evidence before the master as a matter of law or are otherwise tainted

We conclude that, in view of the contract provisions providing that the owner or his representative could inspect the work as it progressed, that no work could be covered up without the owner's consent, and that any work so covered could be exposed at the contractor's expense on the owner's request, the plaintiff's claim was not inherently unknowable.

The result we reach is grounded in sound policy. "A man should not be allowed to close his eyes to facts readily observable by ordinary attention, and maintain for his own advantage the position of ignorance. Such a principle would enable a careless man, and by reason of his carelessness, to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed and framed to accomplish." *Fulcher* v. *United States,* 696 F.2d 1073, 1077 (4th Cir. 1982), quoting *Peacock* v. *Barnes,* 142 N.C. 215, 219 (1906). We conclude, therefore, that the discovery rule offers Melrose no relief, and its claim is barred by the statute of limitations. In view of the disposition we have made, consideration of the parties' other claims is unnecessary.

*Judgment of the Superior
Court reversed.*

by error of law. . . . The court may draw its own inferences from the master's subsidiary findings."